1  ANNETTE D. KIRKHAM, State Bar No. 217958
   annettek@lawfoundation.org
2  MONA M. MOTWANI, State Bar No. 239677
   monam@lawfoundation.org
3  LAW FOUNDATION OF SILICON VALLEY
   111 West Saint John Street, #315
4  San Jose, CA 95113
   Telephone:    (408) 293-4790
5  Facsimile:    (408) 293-0106

6  BART E. VOLKMER, State Bar No. 223732
   BRIAN DANITZ, State Bar No. 247403
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  650 Page Mill Road
   Palo Alto, CA 94304-1050
9  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
10 bdanitz@wsgr.com

11
   Attorneys for Plaintiff
12 JUAN CUEVAS

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                         SAN JOSE DIVISION

16

17
   JUAN CUEVAS,                              Case No. 5:07-cv-02814 (JF)
18
                   Plaintiff,
19                                           **FIRST AMENDED COMPLAINT
                                             FOR VIOLATIONS OF THE TRUTH
20          v.                               IN LENDING ACT; CALIFORNIA
                                             BUSINESS & PROFESSIONS CODE
21 ALTAS REALTY/FINANCIAL SERVICES,          § 17200 *ET SEQ.*; CALIFORNIA
   INCORPORATED, a California corporation,    CIVIL CODE § 1750 *ET SEQ*;
22 dba ATLAS REALTY, dba ATLAS               CALIFORNIA CIVIL CODE § 1632;
   FINANCIAL SERVICES, ALVIN CLAIR           & FOR FRAUD; NEGLIGENT
23 SILBERNAGEL, SAMANTHA TREVINO,            MISREPRESENTATION;
   WORLD SAVINGS, INC, dba WORLD             NEGLIGENCE; UNJUST
24 SAVINGS BANK, FSB, and DOES 1 to 100,     ENRICHMENT& RESCISSION**

25                   Defendants.
                                             **DEMAND FOR JURY TRIAL**
26

27

28

Plaintiff Juan Cuevas (hereinafter "Plaintiff" or "Mr. Cuevas") alleges as follows:

**THE PARTIES**

1.     Mr. Cuevas is an individual that currently resides in San Jose, County of Santa Clara, California.

2.     Defendant Atlas Realty/Financial Services Incorporated, dba Atlas Realty and Atlas Financial Services (hereinafter "Atlas") is a corporation organized and existing under the laws of the State of California.  On information and belief, Atlas' principal place of business is in the State of California, located at 2020 S. Bascom Avenue, Suite C, in Campbell, California.  On information and belief, at all relevant times throughout this complaint, Defendant Atlas held itself out to be a "full service" mortgage broker not affiliated with any one mortgage lender.

3.     Defendant Alvin Clair Silbernagel ("Silbernagel") is an individual residing in the State of California and a real estate broker licensed by the State of California.  On information and belief, Silbernagel is the licensed designated officer/broker for Defendant Atlas.

4.     Defendant Samantha Trevino (hereinafter "Trevino") is an individual residing in the State of California.  On information and belief, Trevino is a loan officer and licensed salesperson for Defendant Atlas.

5.     Defendant World Savings, Inc., dba World Savings Bank, FSB (hereinafter "World Savings Bank") is a corporation organized and existing under the laws of the State of California.  On information and belief, World Savings Bank regularly does business in Santa Clara County, and its principal place of business is 1901 Harrison Street, in Oakland, California.  On information and belief, Defendant World Savings Bank was engaged in the business as a creditor who regularly engaged in the making of mortgage loans, payable by agreement in installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

6.     Mr. Cuevas has yet to establish the true identities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sues those Defendants by fictitious names.  Plaintiff will amend this complaint to allege their true identities as they become known.  Plaintiff alleges on information and belief that each of the fictitiously named Defendants is liable to Plaintiff in

1   some manner for the matters alleged herein.

2       7.    On information and belief, at all times relevant herein, each of the Defendants was

3   the agent, servant and/or employee of each other defendant.  On information and belief, each

4   Defendant was acting within the course and scope of such agency or employment in doing the

5   things alleged.

6                                              **JURISDICTION**

7       8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

8   Plaintiff has alleged causes of action for violations of the Federal Truth in Lending Act, pursuant

9   to 15 U.S.C. § 1601 *et seq.*

10      9.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and

11  determine Plaintiff's state law claims because those claims are related to Plaintiff's federal

12  claims, arise out of a common nucleus of operative facts and form part of the same case or

13  controversy under Article III of the United States Constitution.

14                                                **VENUE**

15      10.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because the

16  Defendants committed each of the wrongful acts alleged herein within this judicial district and

17  reside in this judicial district.

18                                  **INTRA-DISTRICT ASSIGNMENT**

19      11.   Intra-district assignment in San Jose, California is proper because the unlawful

20  conduct that gives rise to the alleged claims occurred in Santa Clara County.

21                                   **STATEMENT OF THE CASE**

22      12.   Defendants have acted in concert to defraud Mr. Cuevas, a fifty-nine year-old

23  Spanish speaking man of Mexican heritage, of his greatest single asset – his home.  Defendants,

24  acting through Defendant Trevino, executed a classic "bait and switch" routine by promising one

25  thing during their discussions, which occurred in Spanish, then taking advantage of his limited

26  ability to read and write English and having him sign documents written in English that did not

27  reflect the terms and conditions promised by Defendants.  Defendant Trevino, representing

28  herself to be Mr. Cuevas' mortgage broker and agent, manipulated Mr. Cuevas' trust by

1    pressuring him to enter a "transaction" arranged by the Defendants. The true terms of this

2    transaction were misrepresented to Mr. Cuevas prior to closing. Defendants' transaction was not

3    a fair bargained-for deal, but a ruse designed to deprive Mr. Cuevas of his home of more than 15

4    years.

5         13.    Further, on the day Mr. Cuevas signed the closing documents of the

6    aforementioned transaction, Defendants provided him with unsigned copies of the document

7    notifying him of his right to rescind which contained contradictory and confusing information.

8    Specifically, the transaction date and the expiration date were incorrectly entered creating the

9    impression that Mr. Cuevas had more time in which to rescind. To make matters worse,

10   Defendants later made handwritten changes to these dates and then forged Mr. Cuevas' initials on

11   the documents to make the record in the file appear as though Mr. Cuevas had received the proper

12   statutory notice of his rescission rights. In fact, Mr. Cuevas never received a copy of the

13   "corrected" notice of right to rescind nor was he ever notified of these changes.

14        14.    Adding to the confusion, funds were disbursed to Mr. Cuevas prior to the

15   expiration of the noticed rescission period.

16        15.    Mr. Cuevas is now forced to file the instant action to avoid losing his home and

17   recover damages caused by the fraudulent conduct and statutory violations engaged in by

18   Defendants.

19                          **STATEMENT OF FACTS**

20        16.    Mr. Cuevas is a fifty-nine year-old man and resides at a home located at 672

21   Swallow Drive, San Jose, California 95111. Mr. Cuevas purchased his home in 1991.

22        17.    Mr. Cuevas was born and raised in Mexico; he is a Spanish speaker who reads and

23   writes almost no English.

24        18.    In February of 2006, Mr. Cuevas began to discuss the possibility of taking out a

25   refinance loan with Defendant Trevino, a mortgage broker. These, and all future communications

26   with Defendant Trevino, were exclusively in Spanish.

27        19.    During their discussions, Mr. Cuevas informed Defendant Trevino that he and his

28   wife made a total of $3200 per month, their existing mortgage payment was $2755 per month,

1   and they were really struggling to make the payments and he wanted to see if he could refinance

2   to get a lower monthly payment.  Mr. Cuevas' existing loan on the property was for $373,000.

3       20.    Defendant Trevino responded by saying not only could she lower his payment, but

4   she could also get him some extra cash out of the house.  Defendant Trevino asked Mr. Cuevas

5   how an extra $40,000 sounded to him.

6       21.    Mr. Cuevas made it clear that he was primarily interested in lowering his monthly

7   payment because he was having trouble making the existing payments, that he did not want the

8   rate to go up and down, and that he wanted taxes and insurance to be included in his payments.

9       22.    In order to lure Mr. Cuevas into a refinancing through Defendants, Defendant

10  Trevino made at least the following representations:

11          a.    that she would obtain the best available loan for Mr. Cuevas;

12          b.    that she would obtain a loan that was affordable for Mr. Cuevas;

13          c.    that Mr. Cuevas could take out an additional $40,000 and the payments

14  would still only be $1600 per month, $1800 per month if he wanted taxes and insurance included;

15          d.     that the interest rate would only go up once each year, and that the

16  payment would only go up by $100-$200 for each of the first 5 years; and

17          e.    that the payments were interest only, and that Mr. Cuevas could pay in

18  extra money each month that would go directly towards the principal amount.

19      23.    Mr. Cuevas relied on these representations and agreed to be represented by

20  Defendants Trevino, Silbernagel and Atlas, reasonably believing them to be honest brokers acting

21  on his behalf.

22      24.    Despite reassurances to Mr. Cuevas that Defendants would find the best

23  refinancing deal possible for Mr. Cuevas, Defendant Trevino steered him directly to the

24  remaining Defendants.  On Defendant Trevino's urging, Mr. Cuevas submitted an application to

25  refinance his home with the Defendants.

26      25.    In May 2006, Defendant Trevino advised Mr. Cuevas that he qualified for a loan

27  and that the loan papers were ready to be signed.  Defendant Trevino also reiterated her earlier

28  representations that Mr. Cuevas would be getting an additional $40,000 out of the property; that

the payments would be $1800 per month, including taxes and insurance; that the interest rate would only go up once every year and that the payment would only go up by $100-$200 for each of the first 5 years; and that the payments were interest only, but that Mr. Cuevas could send extra money each month that would go directly towards the principal amount.

26.    In addition, Defendant Trevino informed Mr. Cuevas that his existing loan had a prepayment penalty of $7,000, which expired in November of 2006.  Mr. Cuevas responded by saying they should wait until after November to refinance so they wouldn't have to pay the penalty, but Defendant Trevino responded by saying (in Spanish): "Don't worry, you will be saving so much money, your payment is lower, and the value of your house is increasing" and that the monthly payments would increase "no more than $200" for each of the first five years. Defendant Trevino therefore assured Mr. Cuevas that it was worth it to refinance "now," rather than waiting until November.

27.    Mr. Cuevas relied on Defendant Trevino's representations regarding the terms of the proposed refinancing deal and agreed to refinance his home through Defendants.

28.    On May 31, 2006, Mr. Cuevas signed the refinancing documentation.  However, despite the fact that all of Mr. Cuevas' discussions with Defendant Trevino were in Spanish and, despite the fact that Mr. Cuevas speaks and reads almost no English whatsoever, all of the documents presented to Mr. Cuevas were in English.

29.    During the signing, Mr. Cuevas learned that a prepayment penalty had been added to the loan.  Concerned and confused, Mr. Cuevas questioned the wisdom of going forward with the loan.  Defendant Trevino brought Mr. Cuevas back to the table by reassuring Mr. Cuevas that he was saving so much money by lowering his monthly payment that he shouldn't worry about the prepayment penalty.  Defendant Trevino never advised Mr. Cuevas of a number of salient facts regarding the true nature of the transaction, including:

a.    that the loan was a negative amortized loan, meaning that the payments had not been set sufficiently high to pay off the interest as it accrued on the loan;

b.    that the amount "interest only" Mr. Cuevas needed to pay each month to prevent the principal from increasing was $3,100 – nearly $400 *more* than the $2755

1    monthly payment he was originally seeking to reduce;

2        c.    that Mr. Cuevas' monthly payment could increase *every month* after the inception

3            of the loan, not just once per year; and

4        d.    that the prepayment penalty on his existing loan was $10,253, not $7,000.

5        30.    Defendant Trevino's misrepresentations about the loan caused Mr. Cuevas to sign

6    all the documents despite the fact that he was unable to read them, and without having them

7    adequately explained to him, thereby securing a mortgage and Deed of Trust with Defendant

8    World Savings Bank on Plaintiff's home.  At the time of execution, Mr. Cuevas was ignorant of

9    the falsity of Defendants' representations and believed them to be true.  In reliance on

10   Defendants' representations, Plaintiff was induced to sign all the closing documents including a

11   Deed of Trust and Defendant World Savings Bank's Adjustable Rate Pick-a-Payment Loan in the

12   amount of $437,000.  Had the Plaintiff known of the actual facts, Plaintiff would not have signed

13   said documents.

14       31.    Defendants' representation that Mr. Cuevas would receive an interest only loan

15   with payments of $1800 per month, including taxes and insurance, and with the interest rate

16   changing only once every year by "no more than $200," were false.  In reality, Defendants lured

17   Mr. Cuevas into agreeing to pay a negative amortized loan with a variable interest rate, the terms

18   of which also included that the outstanding principal balance would *increase* over the course of

19   the loan to as much as $546,250 because the regular periodic payments did not cover the full

20   amount of interest due.  Also, contrary to the Defendants' representations, the variable rate

21   feature on the loan could adjust *each month* after the loan's inception.

22       32.    Defendants knew that, due to the interest rate increase and Plaintiff's fixed gross

23   monthly income of approximately $3200 per month, Mr. Cuevas would not be able to afford the

24   monthly payments.  On information and belief, Defendants purposefully defrauded Plaintiff and

25   structured the loan with monthly payments they knew he could not afford.  On information and

26   belief, Defendants intended for Plaintiff to fall behind on his payments, at the risk of default, so

27   he would return to Defendants in order to either refinance the loan again, resulting in more

28   origination fees for the Defendants as well as payment of the prepayment penalty to Defendants,

1    or to default, leading to foreclosure.

2        33.    As a direct result of Defendants' refinancing transaction, Mr. Cuevas now faces

3    possible foreclosure and removal from his home of fifteen years.

4        34.    In addition to the foregoing, after Mr. Cuevas signed the stack of documents on

5    May 31, 2006, Defendant Trevino provided Mr. Cuevas only with an unsigned copy of the

6    documents.  Included among the unsigned documents were multiple copies, also unsigned, of the

7    Notice of Right to Cancel required by the Federal Truth in Lending Act.  In addition to being

8    unsigned, the copies of the Notice of Right to Cancel erroneously identified the date of the

9    transaction as June 2, 2006 and the expiration of the cancellation right as June 6, 2006.

10       35.    The Notice of Right to Cancel documents actually signed by Mr. Cuevas on May

11   31, 2006 also erroneously identified the date of the transaction as June 2, 2006 and the expiration

12   of the cancellation right as June 6, 2006.  However, at some point after Mr. Cuevas signed the

13   documents, Defendants made handwritten changes to the Notice of Right to Cancel document.

14   Specifically, Defendants changed the date of the transaction from June 2, 2006 to May 31, 2006,

15   and the expiration of the cancellation right from June 6, 2006 to June 3, 2006.  In addition,

16   Defendants *forged* the initials "JC" next to each of the handwritten changes, thus falsely making

17   it appear as though Mr. Cuevas was given the proper notice required by the Truth in Lending Act.

18       36.    Adding to the confusion, Defendants improperly disbursed funds to Mr. Cuevas on

19   June 6, 2006 at 2:29 pm, more than nine hours prior to the expiration of Mr. Cuevas' right to

20   rescind as noticed.

21       37.    Mr. Cuevas discovered the harmful nature of the loan when his first statement

22   showed the principal had increased despite the fact that Mr. Cuevas included an additional $400

23   check to pay down the principal amount together with his first interest-only payment.  Concerned,

24   Mr. Cuevas returned to Defendant Trevino to have the loan "fixed."  Defendant Trevino stated

25   that Defendant World Savings Bank had changed the terms of the loan without her knowledge

26   and that there was nothing that she could do.  When Mr. Cuevas went to Defendant World

27   Savings Bank, Defendant World Savings Bank recommended that Mr. Cuevas go and "Talk to

28   your broker."

38.     As of the filing of this complaint, Mr. Cuevas' payments have already increased to more than $3,200 per month and currently exceed his monthly income.

39.     Mr. Cuevas is informed and believes and thereon alleges that throughout all relevant times in this complaint, Defendant Trevino, who made the misrepresentations herein alleged, was a sales person and therefore the agent and employee of Defendants Silbernagel and Atlas and, in doing the things herein alleged was acting within the course and scope of such agency and employment and with the permission and consent of her co-Defendants.

40.     Moreover, Mr. Cuevas is informed and believes and thereon alleges that the Defendant World Savings Bank conspired with co-Defendants to make such misrepresentations in order to induce Mr. Cuevas to enter into the ruinous transaction.

41.     On information and belief, the Defendants knowingly and purposely conspired to defraud Mr. Cuevas to enter this transaction.  The Defendants knew that Mr. Cuevas was susceptible to this type of transaction.  The Defendants acted with recklessness, bad faith, oppression, fraud, or malice in committing the aforementioned acts of financial abuse in that they knew or should have known that Mr. Cuevas was unaware that the deal he entered satisfied none of his objectives given his inability to read or write English.

### FIRST CAUSE OF ACTION
**Violations of the Federal Truth In Lending Act;**
**Federal Home Ownership & Equity Protections, Act, 15 U.S.C. § 1601. *et seq*.**
**(Against All Defendants)**

42.     Mr. Cuevas hereby realleges and incorporates by reference the allegations of paragraphs 1 through 41 as though fully set forth herein.

43.     At the time of subject transaction, one or more of the Defendants acted as creditors who regularly engaged in the making of mortgage loans, payable by agreement in installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

44.     Accordingly, Defendants are subject to the Truth in Lending Act ("TILA") 15 U.S.C. § 1601 *et seq*., and its implementing regulations, Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

45.    As a result of the subject transaction, Defendants acquired an interest in Mr. Cuevas' home that secures the payment or performance of an obligation.

46.    Defendants provided Mr. Cuevas with *unsigned* copies of the Notice of Right to Cancel required by the Federal Truth in Lending Act, and the *unsigned* copies erroneously identified the date of the transaction as June 2, 2006 and the expiration of the cancellation right as June 6, 2006.

47.    The Notice of Right to Cancel documents actually signed by Mr. Cuevas on May 31, 2006 also erroneously identified the date of the transaction as June 2, 2006 and the expiration of the cancellation right as June 6, 2006.

48.    At some point after Mr. Cuevas signed the documents, Defendants made handwritten changes to the Notice of Right to Cancel document, changing the date of the transaction from June 2, 2006 to May 31, 2006, and the expiration of the cancellation right from June 6, 2006 to June 3, 2006.

49.    Defendants also *forged* the initials "JC" next to each of the handwritten changes, thus falsely making it appear as though Mr. Cuevas was given the proper notice required by the Truth in Lending Act.

50.    The Defendants failed to properly and accurately notify Plaintiff of his right to rescind the transaction, in violation of 15 U.S.C. § 1635(a) and 12 C.F.R. §§ 226.15(b) and 226.23(b).

51.    The Defendants closed on the transaction, disbursing monies and performing other services prior to the expiration of Mr. Cuevas' right to rescind as noticed, in violation of 12 C.F.R. § 226.23(c).

52.    In accordance with the Federal Truth in Lending Act, Plaintiff is entitled to:

a.    Rescission of the loan held by Defendants pursuant to U.S.C. §§ 1635, 1641(d)(1) and 12 C.F.R. § 226.23;

b.    The return of any money or property that has been given to anyone in connection with the transaction and the termination of Defendants' security interest in the property;

c.    Actual damages in an amount to be determined at trial;

d.    Statutory damages as provided by 15 U.S.C. § 1640; and

e.    Costs and disbursements.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### Violation of California Civil Code § 1632
### (Against All Defendants)

53.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of paragraphs 1 through 52 as though fully set forth herein.

54.    Defendants failed to provide any disclosures in Spanish, despite the fact that the loans were negotiated in Spanish, in violation of Civil Code § 1632(c).

55.    Pursuant to subdivision (k) of California Civil Code § 1632, Defendants must allow Mr. Cuevas to rescind the loan.

56.    Pursuant to California Civil Code § 1691 (b), this Complaint serves as notice of rescission.

57.    Mr. Cuevas is entitled to rescind the loan and equitable restitution.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION
### Fraud
### (Against Defendants Atlas, Trevino and Silbernagel)

58.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of paragraphs 1 through 57 as though fully set forth herein.

59.    Defendants Trevino, Silbernagel and Atlas fraudulently and knowingly induced Mr. Cuevas to enter into the May 31, 2006 mortgage transaction by making intentional misrepresentations, failing to provide material information and/or deliberately concealing material information.  As more fully alleged above, Defendant Trevino, for her own benefit on behalf of Defendants Silbernagel and Atlas, knowingly and purposely deceived Mr. Cuevas and induced him to enter into a ruinous transaction that she knew Mr. Cuevas could not repay.

60.    Further, Defendant Trevino made numerous misrepresentations to induce Mr. Cuevas to enter this transaction, including the assurance that Mr. Cuevas would be getting an

1  additional $40,000 out of the property; that the payments would be $1800 per month, including

2  taxes and insurance; that the interest rate would only go up once only every year and that the

3  payment would only go up by "no more than $200" for each of the first 5 years.

4      61.    Mr. Cuevas has incurred and continues to incur substantial damages as a direct and

5  proximate result of his justifiable reliance into entering into a transaction with Defendants based

6  on Defendants' intentional misrepresentations, omissions and/or concealments.

7      62.    Defendants' actions were willful, intentional, and knowing, rendering the May 31,

8  2006, mortgage and deed of trust null and void.

9      WHEREFORE, Plaintiff prays for relief as set forth below.

10                        **FOURTH CAUSE OF ACTION**

11                        **Negligent Misrepresentation**
                          **California Civil Code §§ 1709-1710**

12                 **(Against Defendants Atlas, Trevino and Silbernagel)**

13      63.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of

14  paragraphs 1 through 62 as though fully set forth herein.

15          64.    Defendants falsely represented to plaintiff, *inter alia* that the following

16              important facts were true:

17          a.    that she would obtain the best available loan for Mr. Cuevas;

18          b.    that she would obtain a loan that was affordable for Mr. Cuevas;

19          c.    that Mr. Cuevas could take out an additional $40,000 and the payments

20  would still only be $1600 per month, $1800 per month if he wanted taxes and insurance included;

21          d.    that the interest rate would only go up once each year, and that the payment

22  would only go up by "no more than $200" for each of the first 5 years; and

23          e.    that the right to cancel expired on June 6, 2006.

24      65.    Defendants had no reasonable basis for believing that the representations were true

25  when the representations were made.

26      66.    Defendants knew these representations were false at the time they were made or

27  made the representations in reckless disregard for the truth.

28      67.    Defendants intended that Mr. Cuevas rely on the misrepresentations.

1    68.    Mr. Cuevas reasonably relied on defendants' misrepresentations.

2    69.    As a proximate result of his reasonable reliance on defendants' misrepresentation,

3    plaintiff sustained damages in an amount to be proven at trial, but not yet ascertained.

4    70.    Plaintiff's reasonable reliance on Defendants' misrepresentations was a substantial

5    factor in causing his damages.

6    71.    Defendants were guilty of malice, fraud or oppression as defined in Civil Code §

7    3294 and plaintiff should therefore recover, in addition to actual damages, punitive or exemplary

8    damages to make an example of and to punish Defendants.

9    WHEREFORE, Plaintiff prays for relief as set forth below.

10    **FIFTH CAUSE OF ACTION**
       **Breach of Fiduciary Duty**
11    **(Against Defendants Atlas, Trevino and Silbernagel)**

12    72.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of

13    paragraphs 1 through 71 as though fully set forth herein.

14    73.    Defendant Trevino held herself and Defendants Silbernagel and Atlasout to be a

15    disinterested "full service" mortgage broker not affiliated with any one mortgage lender in her

16    solicitation through her own verbal representations.  Mr. Cuevas justifiably relied on the

17    representations in becoming Defendants' client.

18    74.    Under California law both consultants and mortgage brokers owe their clients a

19    fiduciary duty.

20    75.    In making material misrepresentations and/or omissions in inducing Mr. Cuevas to

21    enter an entirely unfair and one-sided transaction, Defendants Trevino, Silbernagel and Atlas

22    breached their fiduciary duty.

23    76.    This breach of fiduciary duty was the actual and proximate cause of all of Mr.

24    Cuevas' damages arising from this transaction.

25    WHEREFORE, Plaintiff prays for relief as set forth below.

26    **SIXTH CAUSE OF ACTION**
       **Violation of California Business and Professions Code § 17200 *et seq.***
27    **(Against All Defendants)**

28    77.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of

- 12 -

1    paragraphs 1 through 76 as though fully set forth herein.

2        78.    Plaintiff is informed and believes, and on that basis alleges, that Defendants, and

3    each of them, engaged in numerous acts and/or practices of unfair competition within the state of

4    California in violation of Business and Professions Code section 17200 et seq.  These acts or

5    practices include without limitation the following:

6            a.    Offering and making Plaintiff loans, while failing to take into account his

7    ability to repay such loans;

8            b.    Misrepresenting to Plaintiff the terms on which Defendants were willing to

9    enter into refinancing or other loan transactions with him;

10           c.    Failing to provide required notices and copies of loan documents;

11           d.    Falsifying information in loan applications of Plaintiff, without his

12   knowledge or consent; and

13       79.    Violating the Truth in Lending Act, 15 U.S.C. §  1601 et seq; the Consumers

14   Legal Remedies Act, California Civil Code section 1750 et seq.; California Civil Code section

15   1632 et seq.; or any other applicable statute.

16       80.    The above-described unlawful, unfair and fraudulent business practices present an

17   ongoing threat of injury to Plaintiff.  Plaintiff continues to be financially harmed by such conduct

18   and, unless it is restrained, Defendants, and each of them, will continue to engage in such

19   conduct.

20       81.    Pursuant to California Business and Professions Code section 17203 and similar

21   state statutes, Plaintiff is entitled to an order of this Court enjoining Defendants, and each of

22   them, from continuing to engage in unfair competition as defined in Business and Professions

23   Code section 17200 in the State of California and similar statutes of sister-states.  Plaintiff will be

24   irreparably harmed if such an order is not granted.

25       82.    Plaintiff has been injured by Defendants' conduct and is entitled to restitution and

26   disgorgement of profits realized by Defendants, and each of them, as a result of their unfair

27   competition as defined in Business and Professions Code section 17200 et seq.

28       WHEREFORE, Plaintiff prays for relief as set forth below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEVENTH CAUSE OF ACTION**
**Negligence**
**(Against All Defendants)**

83.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of paragraphs 1 through 82 as though fully set forth herein.

84.    Each Defendant owed a duty of care to Mr. Cuevas to exercise reasonable care with respect to the solicitation, negotiation, processing and finalization of the refiance loan agreement.  Atlas Realty/Financial Services, Samantha Trevino, and Alvin Silbernagel further owed a special duty of care as specialists with respect to mortgage brokering services. Among other things, Defendants owed a duty to comply with all statutory requirements, including, but not limited to, California Civil Code § 1632 and the Truth In Lending Act. Defendants breached their duties of care to Mr. Cuevas and failed to exercise reasonable care and skill in performing their mortgage brokering and lending services by, among other things: failing to explain the terms of the refinance transaction and loan agreement, failing to ensure that Mr. Cuevas understood the terms of the transaction and loan agreement, failing to provide a translation of the loan documents in Spanish; failing to submit truthful financial information, evaluate and confirm the accuracy of such financial information; and by failing to provide Mr. Cuevas with signed, accurate copies of the Right to Cancel Notice.

85.    As a proximate result of Defendants' negligence and other breaches of fiduciary duty as alleged herein, Mr. Cuevas entered into a loan he could not afford on undisclosed terms and in doing so repaid an existing loan that contained prepayment penalty clauses, and has suffered and will continue to suffer damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**Violation of California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.***
**(Against All Defendants)**

86.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of paragraphs 1 through 85 as though fully set forth herein.

87.    By their wrongful conduct as alleged herein, Defendants created, engaged in

1    and/or participated in unfair acts or practices in violation of the Consumers Legal Remedies Act.

2    California Civil Code section 1750 *et seq.*

3        88.    By their conduct, Defendants engaged in unfair or deceptive acts or practices in

4    transactions intended to result in the sale of goods or services in violation of California Civil

5    Code section 1770, including but not limited to:

6            a.    Representing that their goods or services have characteristics, uses, or

7    benefits which they do not have, in violation of section 1770(a)(5);

8            b.    Advertising goods or services with intent not to sell them as advertised, in

9    violation of section 1770(a)(9);

10           c.    Representing that the subject of a transaction has been supplied in

11   accordance with a previous representation when it has not, in violation of section 1770(a)(16).

12       89.    Mr. Cuevas has as a direct and proximate result of Defendants' unfair or deceptive

13   acts or practices suffered and continues to suffer damages in a sum according to proof, not yet

14   ascertained, including, but not limited to, all amounts paid or to be paid.

15       90.    Pursuant to section 1780, Plaintiff seeks to enjoin Defendants, and each of them,

16   from engaging in their unfair methods of competition or unfair or deceptive acts or practices, as

17   alleged herein.

18       WHEREFORE, Plaintiff prays for relief as set forth below.

19                        **NINTH CAUSE OF ACTION**
                            **Unjust Enrichment**
20                         **(Against All Defendants)**

21       91.    Mr. Cuevas hereby realleges and incorporates by reference the allegations of

22   paragraphs 1 through 90 as though fully set forth herein.

23       92.    By their wrongful acts and omissions, Defendants were unjustly enriched at the

24   expense of Plaintiff.

25       93.    Plaintiff is entitled to restitution from Defendants and disgorgement of all profits,

26   benefits and other compensation obtained by Defendants through their wrongful conduct.

27       WHEREFORE, Plaintiff prays for relief as set forth below.

28

1

**PRAYER FOR RELIEF:**

2          1.        Cancellation of the Deed of Trust and any and all mortgage documents dated May

3    31, 2006;

4          2.        Rescission of the Deed of Trust and any and all mortgage documents dated May

5    31, 2006 and any and all agreements or contracts that made up the fraudulent transaction at issue;

6          3.        An accounting, restitution and/or disgorgement;

7          4.        Compensatory and general damages;

8          5.        Special damages;

9          6.        Punitive and exemplary damages according to proof;

10         7.        Statutory damages pursuant to the Truth In Lending Act;

11         8.        Costs and reasonable attorneys' fees;

12         9.        Prejudgment interest;

13         10.       Injunctive relief;

14         11.       Such other and further relief as the Court deems proper.

15

16                                    Respectfully submitted,

17

18   Dated:  August 31, 2007                    LAW FOUNDATION OF SILICON VALLEY

19                                              _____/s/ Mona Motwani_____
                                                Mona Motwani
20                                              Attorneys for Plaintiff
                                                JUAN CUEVAS
21

22

23

24

25

26

27

28

1

## **JURY DEMAND**

2

3          Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial

4    by jury as to each and every claim for which he is so entitled.

5

6    Dated:          August 31, 2007          LAW FOUNDATION OF SILICON VALLEY

7

8                                            /s/ Mona Motwani
                                             Mona Motwani
9                                            Attorney for Plaintiff
                                             JUAN CUEVAS
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28