1  Jack R. Nelson (SBN 111863)
   Keith D. Yandell (SBN 233146)
2  REED SMITH LLP
   1999 Harrison Street, Suite 2400
3  Oakland, CA  94612-3572

4  **Mailing Address:**
   P.O. Box 2084
5  Oakland, CA  94604-2084

6  Telephone:    (510) 763-2000
   Facsimile:    (510) 273-8832
7
8  Attorneys for Defendant World Savings Bank,
   FSB (erroneously sued as "World Savings, Inc.
9  dba World Savings Bank FSB")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUAN CUEVAS,<br><br>              Plaintiff,<br><br>    vs.<br><br>ATLAS REALTY/FINANCIAL SERVICES, INCORPORATED, a California corporation, dba ATLAS REALTY, dba ATLAS FINANCIAL SERVICES, ALVIN CLAIR SILBERNAGEL, SAMANTHA TREVINO, WORLD SAVINGS, INC., dba WORLD SAVINGS BANK, FSB, and DOES 1 to 100,<br><br>              Defendants. | Case No. C07 02814 JF<br><br>**DEFENDANT WORLD SAVINGS BANK FSB'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND, SIXTH, SEVENTH, EIGHTH AND NINTH CLAIMS FOR RELIEF AND TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**<br><br>**FRCP 12(b)(6); FRCP 12(f)**<br><br>Date:          December 14, 2007<br>Time:          9:00 a.m.<br>Place:         Department 3<br>Compl. Filed:  May 30, 2007<br><br>Honorable Jeremy Fogel |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. 07 02814 JF

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second, Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

# TABLE OF CONTENTS

**Page**

I .    SUMMARY OF ARGUMENT ................................................................................1

II .   CUEVAS' FACTUAL ALLEGATIONS ..............................................................2

III .  LEGAL ARGUMENT .........................................................................................3

A.    Applicable Legal Standards ......................................................................3

B.    Cuevas Cannot State A Claim For Relief Against World Under Civil
      Code Section 1632 ....................................................................................4

      1.    HOLA Preempts Cuevas' Section 1632 Claim...............................4

      2.    Cuevas Cannot State A Claim For Relief Under Section 1632 In
            Any Event .....................................................................................7

C.    Cuevas' Cannot State A Claim Against World Under The CLRA Because
      HOLA Preempts The CLRA And Because The CLRA Does Not Apply
      To Extensions Of Credit ...........................................................................8

      1.    HOLA Preempts the CLRA As Cuevas Would Have It Apply To
            World ............................................................................................8

      2.    The CLRA Does Not Apply To Loans .........................................9

D.    Cuevas Cannot State A Cause Of Action For Negligence Because HOLA
      Preempts Any Such Claim And World Did Not Owe Cuevas A Common
      Law Duty Of Care....................................................................................10

E.    HOLA Preempts Cuevas' UCL Cause Of Action Because It Is Predicated
      On Preempted State Laws And On TILA Violations That Cannot Support
      A UCL Claim ...........................................................................................11

F.    Cuevas' Claim For Unjust Enrichment Fails Because Any Such Claim Is
      Preempted And Cannot Arise Out Of The Limited Relationship Between
      Cuevas And World....................................................................................13

G.    Cuevas' Prayer for Punitive Damages Should Be Stricken .......................13

H.    Even if Cuevas' UCL Claim Survives, His Prayer For Injunctive Relief
      Under the UCL Should Be Stricken Because He Has Not Properly Plead a
      Putative Class Action ...............................................................................14

IV .   CONCLUSION...................................................................................................15

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Case No. 07 02814 JF                                    i

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second,
Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

# TABLE OF AUTHORITIES

## CASES

*Am. Bankers Ass'n v. Lockyer,*
   239 F. Supp. 2d 1000 (E.D. Cal. 2003) ................................................................6

*Balisteri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1988) ................................................................3

*Benson v. Kwikset Corp.,*
   152 Cal. App. 4th 1254 (2007) ................................................................14

*Berry v. American Express Publishing, Inc.,*
   147 Cal. App. 4th 224 (2007) ................................................................9, 10

*Brousseau v. Jarrett,*
   73 Cal. App. 3d 864 (1977) ................................................................13

*Civil Service Employees Ins. Co. v. Sup. Ct.,*
   22 Cal. 3d 362 (1978) ................................................................9

*Engstrom v. Kallins,*
   49 Cal. App. 4th 773 (1996) ................................................................7

*Darby v. City of Torrance,*
   810 F. Supp. 271 (C.D. Cal. 1992) ................................................................4

*Fidelity Federal Sav. & Loan Assn. v. De La Cuesta,*
   458 U.S. 141  (1982) ................................................................4

*G.D. Searle & Co. v. Superior Court,*
   49 Cal. App. 3d 22 (1975) ................................................................13

*Gonzalez v. Ameriquest Mortgage Co.,*
   2004 U.S. Dist. LEXIS 22705 (N.D. Cal. Mar. 1, 2004) ........................................8

*Griffin Indus. v. Irvin,*
   2007 U.S. App. LEXIS 19828 (11th Cir. August 21, 2007) ....................................3

*Hawai'i Cmty. Fed. Credit Union v. Keka,*
   94 Haw. 213, 11 P.3d 1 (2000) ................................................................2

*Jefferson v. Chase Home Finance LLC,*
   2007 Dist. LEXIS 36298 (N.D. Cal.) ................................................................8

*Jones v. Wells Fargo Bank,*
   112 Cal. App. 4th 1527 (2003) ................................................................11

*Knox v. Ameriquest Mortgage Co.,*
   N.D. Cal. Action No. C-05-00240 ................................................................10

*Kramer v. Home Savings of America, FSB,*
   721 So. 2d 1239 (Fla. Dist. Ct. App. 1998) ................................................................2

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. C07 2814 JF         ii

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second,
Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

*Lopez v. World Savings and Loan Association,*
    105 Cal. App. 4th 729 (2003) ...................................................................................5, 6

*Montoya v. McLeod,*
    176 Cal. App. 3d 57 (1985) ...........................................................................................8

*Morgan v. American International Group, Inc.,*
    Superior Court of Alameda County Case No. RG04166560.............................9, 10

*Munoz v. Int'l. Home Capital Corp.,*
    2004 U.S. Dist. LEXIS 26362 (N.D. Cal. May 4, 2004) ...........................................8

*Oklahoma Bankers Assoc. v. Home Sav. & Loan Assoc.,*
    625 F. Supp. 993 (1984) ................................................................................................8

*Plata v. Long Beach Mortgage Co., No. C 05-02746 JF,*
    2005 WL. 3417375 (N.D. Cal. Dec. 13, 2005).........................................................11

*Rokos v. Peck,*
    182 Cal. App. 3d 604 (1986) .......................................................................................13

*Rosenberg v. Washington Mutual Bank, F.A.,*
    849 A.2d 566 (N.J. Super. 2004) ..................................................................................5

*Ruiz v. Decision One Mortg. Co., LLC,*
    2006 Dist. LEXIS 54571 at 3 ......................................................................................11

*Sierra-Bay Fed. Land Bank Ass'n v. Superior Court,*
    227 Cal. App. 3d 318 (1991) .......................................................................................11

*Silvas v. ETrade Mortgage Corporation,*
    421 F. Supp. 2d 1315 (S.D. Cal. 2006).............................................................. passim

*Van Slyke v. Capital One Bank, No. C 07-00671,*
    2007 U.S. Dist. LEXIS 44072 (N.D. Cal. June 7, 2007)...........................................9

*Wolf v. Superior Court,*
    107 Cal. App. 4th 25 (2003) .......................................................................................11

*Wuxi Multimedia, Ltd. v. Koninklijke Phillips Elecs., N.V.,*
    2006 U.S. Dist. LEXIS 9160 (D. Cal. 2006) .............................................................3

*Wisconsin League of Financial Inst. v. Galecki*
    707 F. Supp. 401 (W.D. Wisc. 1989) ...........................................................................6

## STATUTES

12 C.F.R. § 560.2 ................................................................................................................1, 5

12 U.S.C. § 1461 ....................................................................................................................1

Cal. Bus. & Prof. Code § 10240 ..........................................................................................7

Cal. Bus. & Prof. Code § 17200 ......................................................................................1, 3

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second,
Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

Cal. Bus. & Prof. Code § 17203 ..................................................................................4

Cal. Bus. & Prof. Code § 17235 ..................................................................................4

Cal. Civ. Code § 1761(b) ..............................................................................................9

Cal. Civ. Code § 1770 ...................................................................................................9

Cal. Civ. Code § 3294(a) .............................................................................................14

Cal. Civ. Code §1632(b)(2) ...........................................................................................7

Cal. Fin. Code § 22000 ..................................................................................................7

Cal. Fin. Code § 22050(a) .............................................................................................7

Cal. Fin. Code § 18560 ..................................................................................................7

Fed. R. Civ. P. 12(f) ..................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Case No. C07 2814 JF                          iv

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second,
Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# I.    SUMMARY OF ARGUMENT

Plaintiff Juan Cuevas ("Cuevas") has sued his mortgage loan broker, Atlas Realty/Financial Services ("Atlas Realty") and the lender that he and Atlas Realty selected for his new home mortgage, World Savings Bank FSB, (erroneously sued as "World Savings, Inc., dba World Savings Bank, FSB," hereinafter, "World").  Cuevas claims that: (1) that he did not understand the loan documents that he executed when he refinanced his home mortgage; (2) the terms of the World loan were not what his agent, Atlas Realty, initially promised it would find for him; and (3) there was a technical violation of the federal Truth-In-Lending Act ("TILA") relative to his loan because a date on his Notice of Right to Cancel was changed without his authorization.

World is a federal savings bank whose lending activities, including those relating to Cuevas' loan, were and are governed exclusively by the Home Owners' Loan Act of 1933, 48 Stat. 129, as amended, 12 U.S.C. Section 1461, *et seq.* ("HOLA"), and regulations promulgated under HOLA by the federal Office of Thrift Supervision ("OTS") and found at 12 C.F.R. Section 560.2. Cuevas, however, ignores this preemption of state laws with respect to federally chartered institutions and (in addition to his TILA claim) improperly attempts to assert various California statutory and common law theories of recovery against World regarding its documentation and disclosures concerning his loan. These state claims must all be dismissed in light of the exclusive application of HOLA to World's lending operations.  In any event, Cuevas has failed, as a matter of law, to plead viable claims for relief against World under any of these state law theories.  Cuevas also improperly seeks forms of relief against World for which he has failed to establish any legal basis.

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), World therefore seeks an Order (1) dismissing Cuevas' Second, Sixth, Seventh, Eighth and Ninth Claims for Relief as to World, and (2) striking Cuevas' prayer for "punitive and exemplary" damages from World.[1]

---

[1] With respect to Cuevas' Sixth Claim for Relief, brought under California's Unfair Competition Law (Business & Professions Code Section 17200 *et seq.*) (the "UCL"), World alternatively seeks an order striking: (a) the portions of Paragraph 79 of the Complaint in which Cuevas purports to base his UCL claim on violations of other California statutes inapplicable to World; and (b) Paragraph 81 of the Complaint, which asserts a right by Cuevas to injunctive relief against World that is in reality an improper request for relief on behalf of an un-pled putative UCL class.

## II.    CUEVAS' FACTUAL ALLEGATIONS

In February 2006, Cuevas spoke to defendant Samantha Trevino ("Trevino") about the possibility of refinancing his home loan.  Complaint ¶18.  Trevino was "a sales person and therefore the agent and employee of" defendants Alvin Clair Silbernagel ("Silbernagel") and Silbernagel's company, Atlas Realty (collectively, "Atlas").  Id. ¶39.  Cuevas specifically alleges that Atlas "held itself out to be a 'full service' mortgage broker not affiliated with any one mortgage lender."  Id. ¶2. Cuevas alleges that Trevino made numerous representations to him (in Spanish) regarding the terms under which she could obtain a new loan for him.   Id. at ¶¶30, 54.  Relying on Trevino's representations of independence, and the type of loan terms Atlas would locate for him, Cuevas alleges that he "agreed to be represented by Defendants Trevino, Silbernagel and Atlas" in dealings with possible lenders  Id. ¶23.

Cuevas alleges that Trevino ultimately "steered [him]… directly" into a loan (the "Loan") with World.  Id. ¶24.  Cuevas alleges that he "relied on Defendant Trevino's representations regarding the terms of the proposed financing deal and agreed to refinance" through World.  Id. ¶27, 30.  Cuevas alleges that the terms of the Loan did not match the terms that Trevino initially represented that Atlas would get for him, and further that "Trevino never advised Mr. Cuevas of a number of salient facts regarding the true nature of the [Loan] transaction."  Id. ¶¶29, 30.  Cuevas alleges that throughout the process of closing the Agreement, Trevino continued to be the one person with whom he discussed the loan and alleges that it was Trevino – Cuevas' appointed agent - who "caused Mr. Cuevas to sign all the documents."  Id. ¶30.

In addition, Cuevas alleges that Trevino presented him with unsigned copies of a Notice of Right to Cancel, and that the document erroneously identified the date of the Loan as June 2nd rather than May 31st.  Id. ¶34.  Cuevas also contends that the disclosure Trevino provided identified Cuevas' deadline to rescind the Agreement as June 6, 2006, one day **longer** than required by law.[2]  Id.  Cuevas then alleges that "the defendants" (apparently now including World) changed

---

[2] Providing a borrower with a longer period within which to rescind a loan does not violate TILA.  Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Haw. 213, 11 P.3d 1 (2000); Kramer v. Home Savings of America, FSB, 721 So. 2d 1239 (Fla. Dist. Ct. App. 1998).

Case No. C07 02814 JF                    -2-

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second, Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    the Notice of Right to Cancel to accurately reflect the date of the transaction and forged Cuevas'

2    initials next to the handwritten changes.  Id. at ¶35.[3]

3            On August 31, 2007, Cuevas sued Atlas for fraud, breach of fiduciary duty and

4    negligent representation.  Cuevas also added claims for relief against Atlas and World for: violation

5    of TILA; violation of California Civil Code Section 1632 (a statute that Cuevas contends required

6    translation of his loan documents and disclosures into Spanish); violation of California's Unfair

7    Competition Law, California Business & Professions Code Section 17200, et seq. ("UCL");

8    negligence; violation of the California Consumers Legal Remedies Act, California Civil Code

9    Sections 1750 et seq. ("CLRA") and; unjust enrichment.  Cuevas also seeks punitive damages from

10   both Atlas and World, again under California law.

11           As a matter of law, Cuevas cannot prevail against World on any of these state claims.

12                    **III.    LEGAL ARGUMENT**

13   **A.    Applicable Legal Standards**

14           Dismissal under Rule 12(b)(6) is proper when a complaint either exhibits a "lack of a

15   cognizable legal theory or the absence of sufficient facts under a cognizable legal theory."  Balisteri

16   v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1988); see also, Silvas v. E*Trade Mortgage

17   Corporation, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006).  For the purposes of ruling on a motion to

18   dismiss, material facts alleged in a complaint are of course treated as true, [id.], but where a

19   complaint contains inconsistent allegations, the Court need not accept those allegations.  Wuxi

20   Multimedia, Ltd. v. Koninklijke Phillips Elecs., N.V., 2006 U.S. Dist. Lexis 9160, 26-27 (D. Cal.

21   2006).  Further, a court "need not ignore specific factual details of the pleading in favor of general or

22   conclusory allegations."  Griffin Indus. v. Irvin, 2007 U.S. App. LEXIS 19828 (11th Cir. August 21,

23   2007).[4]

24   3 Cuevas does not allege that he ever relied upon the allegedly altered Notice of Right to Cancel, nor does he allege that
     he tried or wanted to rescind the Loan on or before June 6, 2006.

25

26   4 This rule permitting rejection of boilerplate allegations that are contradicted by specific admissions becomes important
     when testing Cuevas' apparent attempt to make World somehow responsible for the actions of Atlas.  Cuevas candidly
     admits in his Complaint that Atlas was his agent, and alleges that Atlas represented itself to be independent of World.
27   Cuevas does not allege that World represented anything to the contrary.  Cuevas thus cannot rely on his boilerplate
     allegation that "each of the Defendants was the agent, servant and/or employee of each other defendant."

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Separately, a motion to strike pursuant to Rule 12 is proper where a matter plead in a complaint is "redundant, immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). Among other things, this means that the Court may strike requests for remedies which are unavailable as a matter of law. See Darby v. City of Torrance, 810, F.Supp. 271, 272-273 (C.D. Cal. 1992), *rev'd on other grounds*.[5]

**B.    Cuevas Cannot State A Claim For Relief Against World Under Civil Code Section 1632**

Cuevas alleges that World violated Section 1632 by failing "to provide any disclosures [to Cuevas about the Loan] in Spanish, despite the fact the loans were negotiated in Spanish." Complaint ¶ 59. As outlined below, however, Cuevas cannot state a cause of action against World under this statute for two independent reasons. First, HOLA preempts 1632 as Cuevas would apply it here to a federally chartered savings bank. Independently, Cuevas' claim fails because Section 1632 would not apply to the Loan in any event; it does not apply to loans secured by real property unless the loan is (1) initially funded by a real estate broker, (2) made by an "industrial lender," (3) made by an entity licensed under the California Finance Lenders Law, or (4) constitutes a "reverse mortgage."

**1.    HOLA Preempts Cuevas' Section 1632 Claim**

HOLA expressly preempts application of any state laws that purports to – or is used in an attempt to-  require a federally chartered bank provide any information to a consumer in connection with a home loan. Therefore, HOLA preempts Section 1632 as it would be applied to World because Cuevas is arguing that the statute requires World to use a specific method of disclosure of the terms of a home loan.

The paramount purpose of HOLA is to ensure the solvency of federal associations through a uniform scheme of regulation so that the public has access to means of home financing. See 12 C.F.R. §560.2; see also, Fidelity Federal Sav. & Loan Assn. v. De La Cuesta, 458 U.S. 141

---

[5] This rule is significant relative to the scattergun requests for relief in Cuevas' Complaint.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   (1982), 159-160.  In furtherance of its stated goal of ensuring uniformity, Section 560.2 states that

2   "OTS hereby occupies the entire field of lending regulation for federal savings associations."  The

3   regulation goes on to state that OTS intends to give associations "maximum flexibility to exercise

4   their lending powers in accordance with a uniform federal scheme of regulation" and that, except as

5   provided in paragraph (c), federal savings associations may extend credit as authorized by federal

6   law "without regard to state laws purporting to regulate or otherwise affect their credit activities."

7   Id.  "Thus, the federal regulation is intended to preempt all state laws purporting to regulate any

8   aspect of the lending operations of a federally chartered savings association, whether or not OTS has

9   adopted a regulation governing the precise subject of the state provision."  Lopez v. World Savings

10  and Loan Association, 105 Cal. App. 4th 729 (2003).

11          HOLA provides a *non-exhaustive* list of the types of state laws that it intends to

12  preempt.  The list specifically includes all state laws relating to "[d]isclosures and advertising,

13  including laws requiring specific statements, information, or other content to be included in credit

14  application forms, credit solicitations, billing statements, credit contracts, or other credit-related

15  documents and laws requiring creditors to supply copies of credit reports to borrowers or

16  applicants…" 12 C.F.R. §560.2(b)(9); see also Rosenberg v. Washington Mutual Bank, F.A., 849

17  A.2d 566, 572 (N.J. Super. 2004).

18          Even broad state statutes face preemption when they are alleged to apply to the

19  lending activities of a federally chartered financial institution operating under HOLA.  In Silvas v.

20  E*Trade Mortgage, 421 F. Supp. 2d at 1317, putative class action plaintiffs obtained loans from the

21  defendant bank, but elected to rescind the mortgage transaction within the three days allotted for

22  cancellation by TILA.  The bank did not refund fees that the plaintiffs had paid to "lock-in" their

23  interest rate.  Id.  The plaintiffs sued under the UCL and California Business and Professions Code

24  Section 17500, alleging that the bank's advertisements and disclosures failed to clearly,

25  conspicuously and accurately disclose that lock-in fees were non-refundable.  Id.  In granting the

26  bank's demurrer, the court stated "Plaintiffs' UCL claims therefore attack Defendants' lending

27  practices in two categories where OTS has explicitly indicated federal law occupies the field: (1)

28  disclosure and advertising and (2) loan related fees."  Id. at 1319.  The court held that any an attempt

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second,
Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

1   to use a state statute to supplement a federal law that explicitly occupies an entire field is

2   impermissible.  Id.  The Silvas court's analysis is controlling here, where Cuevas is asserting that a

3   state statute carries a supplemental requirement for translation of loan disclosures made by a

4   federally chartered savings bank.

5           Similarly, in Am. Bankers Ass'n v. Lockyer, 239 F. Supp 2d 1000 (E.D. Cal. 2003),

6   plaintiffs sought recovery pursuant to California Civil Code Section 1748, which purported to

7   impose various requirements on credit card companies.  Among those requirements, the statute

8   required credit card issuers to include a number of specific disclosure statements in a credit

9   cardholder's billing statement.  In finding preemption under HOLA, the Court stated, "[b]ecause

10  section 1748.13's disclosure requirements mandate that specific information be included in

11  cardholder's billing statements, it directly conflicts with OTS regulation §560.2(b)(9)."  Id. at 1011.

12          Similarly, the Court in Lopez v. World Savings and Loan Association, 105 Cal. App.

13  4th 729 (2003), held that HOLA preempted a California state law regarding demand payoffs.  The

14  Court noted that preemption is appropriate whether or not the OTS has adopted a regulation

15  governing the precise subject of the state provision.  Id. at 738.  The presence of general regulations

16  regarding the subject of the provision is sufficient.  Id.  In addition, the Lopez court stated that "it

17  'need not determine the full breadth of the term operations of a federal Association because there can

18  be no dispute that such phrase extends at least to the regulation of mortgage escrow accounts *and*

19  *mortgage disclosures.*'"  Id. at 742, citing Wisconsin League of Financial Inst. v. Galecki, 707 F.

20  supp. 401, 404 (W.D. Wisc. 1989) (emphasis added).

21          Returning to the present case, it is clear that HOLA preempts Section 1632 in the

22  context of the Loan.  It is undisputed that World Savings is a federally chartered bank.  See attached

23  Request for Judicial Notice ¶1.  Cuevas is arguing here that Section 1632 regulates the content of

24  loan disclosures.  But, as the court held in Silvas when assessing the purported application of the

25  UCL to loan disclosures, state regulation of a field entirely occupied by federal law is impermissible.

26  Silvas, 421 F. Supp. 2d at 1319.  Moreover, as the Court in Lopez stated, once it is apparent that a

27  state law regulates mortgage disclosures of a federally chartered bank, no further inquiry is required;

28  preemption is appropriate.  Lopez, 105 Cal. App. 4th at 742; Silvas, 421 F. Supp. at 1319.  Here,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  Cuevas would have Section 1632 regulate the requisite content of mortgage disclosures prepared by

2  a federally chartered bank.[6]   That is not permitted under HOLA and, therefore, no further analysis is

3  necessary.  HOLA preempts Section 1632.

4

5  **2.    Cuevas Cannot State A Claim For Relief Under Section 1632 In Any Event**

6          On its face, Civil Code Section 1632 only applies to a "loan or extension of credit

7  secured *other than by real property*…"  Cal. Civ. Code §1632(b)(2) (emphasis added).  Section

8  1632(b)(4) then outlines a handful of narrow exceptions to this rule.  Those are negotiations for loan

9  agreements that are; (1) reverse mortgages [Civ. Code §1632(b)(5)]; (2) made by an "industrial

10  lenders" and governed by California Finance Code Section 18000[7]; (3) made by lenders who are

11  subject to the California Finance Lenders Law [Cal. Finance Code Section 22000 *et seq.*][8]; and

12  conducted by mortgage brokers [Cal. Bus. & Prof. Code Section 10240].[9]   Here, none of the first

13  three exceptions are even arguably triggered:  Cuevas' Loan was not a reverse mortgage; World is

14  not an "industrial lender"; and World operates pursuant to HOLA and thus is not subject to the

15  California Finance Lenders Law.

16

17          Neither does the final exception apply.  Cuevas does not allege that World conducted

18  any negotiations with Cuevas, nor does Cuevas allege that World acted as a mortgage broker.

19  Instead, Cuevas admits that Atlas was <u>his</u> agent and that he was never led to believe that Atlas was

20  ---

[6] A stated purpose of HOLA is national uniformity.  If HOLA did not preempt Section 1632, then laws governing disclosure requirements for Loans from federally chartered banks would vary between California and other states.  This is precisely the type of inconsistency HOLA was intended to prevent.

[7] An "industrial lender" is a "premium finance agency" incorporated under Finance Code Section 18000, *et seq*.  Cal. Fin. Code §18560.

[8] The California Finance Lenders law only applies to licensed lenders.  It specifically **excludes**, "any person doing business **under any law** of this state or **of the United States relating to banks, trust companies, savings and loan associations** …."  Cal. Fin. Code §22050(a) (emphasis added).

[9] See <u>Engstrom v. Kallins</u>, 49 Cal. App. 4th 773, 780 (1996) (Section 10240 requires that "where a real estate broker acts as mortgage broker (subd. (a)), [or] where a real estate broker initially offers himself as a mortgage broker but in fact ends up the lender (subd. (b)) … [the] a broker must give [the borrower a form of] notice required by section 10240 and set out in section 10241."

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Case No. C07 02814 JF                    -7-

Defendant World Savings Bank FSB's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Plaintiff's Second, Seventh, Eighth and Ninth Claims for Relief And To Strike Portions of Plaintiff's Complaint

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   affiliated with World.  See Complaint at ¶¶23 and 39.  These admissions by Cuevas eliminate any

2   imputation to World of Atlas' responsibilities to Cuevas under Business & Professions Code Section

3   10240.  Accordingly, Cuevas' effort to invoke Section 1632 against World differs dramatically from

4   the few specific situations where other judges in this district have permitted complaints to go

5   forward against a lender under Section 1632.  In Gonzalez v. Ameriquest Mortgage Co., 2004 U.S.

6   Dist. Lexis 22705 at *25-26 (N.D. Cal. Mar. 1, 2004), Judge White found that because a lender's

7   employees had multiple direct communications with a borrower, there was enough suggestion in the

8   pleading that the lender acted like a mortgage broker to support denial of a motion to dismiss.  But

9   here, no communications at all went from World to Cuevas.  And, in Munoz v. Int'l. Home Capital

10  Corp., 2004 U.S. Dist. Lexis 26362 (N.D. Cal. May 4, 2004), Judge Seeborg found that borrowers

11  had alleged that the activities of the broker could be "attributable to [the lender] under the general

12  rules of agency."  Id. at *27-28 (citing Montoya v. McLeod, 176 Cal. App. 3d 57, 64 (1985) (where

13  real estate agent was "vested with some discretionary authority" by a lender, she "became an agent

14  of" lender)).  Cuevas cannot rely on such a boilerplate allegation, however, for he admits specifically

15  that he believed at all time that Atlas was "not affiliated" with World.  Complaint at ¶2.

16  **C.   Cuevas' Cannot State A Claim Against World Under The CLRA Because HOLA**
17  **Preempts The CLRA And Because The CLRA Does Not Apply To Extensions Of Credit**

18  **1.   HOLA Preempts the CLRA As Cuevas Would Have It Apply To World**

19

20          All of Cuevas' CLRA claims are grounded in what Cuevas alleges are erroneous or

21  false representations about the formation of the Loan and its terms and disclosures.  Cmplt. ¶88.  As

22  World has explained, however, the OTS has explicitly occupied the field of all lending activities of

23  federal savings associations, including all matters relative to "disclosures and advertising."  See

24  Silvas, 421 F. Supp. at 1319 (holding application of the UCL to "disclosure and advertising"

25  preempted); see also, Oklahoma Bankers Assoc. v. Home Sav. & Loan Assoc., 625 F. Supp. 993,

26  997 (1984) (upholding trial court's finding that "because advertising by federal savings and loan

27  associations was regulated by Section 563.27, [state law] which prohibits the use of certain terms by

28  businesses other than banking businesses conducted pursuant to state law was preempted.").  HOLA

thus preempts the CLRA as Cuevas purports to apply it to World.

### 2.    The CLRA Does Not Apply To Loans

The CLRA, by its express terms, applies only to transactions that involve the "sale or lease" of "goods" or "services."  Cal. Civ. Code § 1770.  If the subject of the action is not a "sale" or "lease" of a "good" or "service," then the action lies beyond the scope of the CLRA.  Civil Service Employees Ins. Co. v. Sup. Ct., 22 Cal. 3d 362, 376 (1978) (holding consumer insurance transactions not subject to the CLRA); Berry v. American Express Publishing, Inc., 147 Cal. App. 4th 224 (2007) (holding extension of credit is neither "goods" nor "services" under the CLRA).

Loans are not covered by the CLRA.  The CLRA defines both "goods" and "services." Section 1761(a) defines "goods" to mean "tangible chattels bought or leased for use primarily for personal, family, or household purposes …."  (Emphasis added).  Section 1761(b) defines "services" as "work, labor, and services … including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).  Neither of these definitions encompasses the extension of credit. Berry, 147 Cal. App. 4th 224; Van Slyke v. Capital One Bank, No. C 07-00671, 2007 U.S. Dist. LEXIS 44072 (N.D. Cal. June 7, 2007)(attack on credit card fees and disclosures under CLRA rejected); Morgan v. American International Group, Inc., Superior Court of Alameda County Case No. RG04166560 (unpublished) (Orders Granting Demurrers attached to Request for Judicial Notice as Exhibits B&C) (home mortgages and home equity lines of credit held no subject to the CLRA).

In Berry, a credit card holder sued their credit card company for injunctive relief based on CLRA.  Berry, 147 Cal. App. at 233.  The trial court sustained, without leave to amend, demurrers to plaintiff's complaint.  Id. at 228.  The Court of Appeal affirmed, holding that: "neither the express text of CLRA nor its legislative history supports the notion that credit transactions separate and apart from any sale or lease of goods or services are covered under the act."  Id. at 233.  In its analysis, the appellate court relied heavily on the legislative history of the CLRA and the legislature's deletion of the phrase "money and credit" from early drafts of the statute.  Id. at 230-31.

In Van Slyke, Judge Alsup of this District Court acknowledged the persuasiveness of Berry's logic and similarly held that CLRA does not apply to extensions of credit.  Van Slyke, 2007 U.S.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  Dist. LEXIS 44072, *10.  Judge Alsup rejected plaintiffs' argument that "their claim does not deal

2  with the extension of credit and instead deals with a predatory scheme involving extensions of

3  multiple lines of credit and deceptive fees charged thereon." Id.  He found that the case before him

4  "deals only with the extension of credit, in however unseemly a manner, not with the sale or lease of

5  goods or services." Id.  Thus, CLRA did not apply. Id.

6       Finally, in Morgan, Judge Ronald Sabraw, then sitting as the Alameda Superior Court's

7  designated Complex Litigation Judge, went through exactly the same analysis and found that

8  consumer loans, including mortgages and home equity lines of credit, even though the latter

9  contained some "service" features, are not subject to the CLRA.  RFJN, Ex. B&C at p. 1.[10]

10      Because Cuevas' purported CLRA claim is grounded solely in World's extension of credit, it

11  necessarily fails because an extension of credit is not a good or service under the CLRA.

12  **D.     Cuevas Cannot State A Cause Of Action For Negligence Because HOLA Preempts Any**

13  **      Such Claim And World Did Not Owe Cuevas A Common Law Duty Of Care**

14      Cuevas alleges "negligence" on the part of World arising out of his claim that World

15  had a "duty to comply with all statutory requirements," including purported duties to explain,

16  disclose and document loan terms.  Cmplt, ¶84.  Leaving aside for the moment the fact that statutory

17  requirements cannot metamorphosize into a common law duty of care, the first fatal flaw in Cuevas'

18  negligence claim is that, as World has already explained, HOLA preempts any effort to apply the

19  law of California – whether statutory or common - to a federally chartered bank's lending activities.

20

21  ───────────────

22  [10] There are two Northern District slip opinions in which the courts found that the CLRA did apply to defendants in the credit business.  Neither controls here.  In Jefferson v. Chase Home Finance LLC, 2007 Dist. LEXIS 36298 (N.D. Cal.), Judge Henderson found that certain of Chase's prepaid mortgage practices were subject to the CLRA.  Id. at *7.  Judge Henderson also viewed Berry was unpersuasive because, he observed, the Berry court "relied heavily on the legislature's consideration and rejection of 'credit'" as part of the CLRA and because the actions he was examining involved "more than the provision of a loan; they also include financial services." Id.  But here (and as Judge Alsup pointed out was true in Van Slyke), there are no "services" whatsoever at issue.  Jefferson is thus inapposite.

25  In Knox v. Ameriquest Mortgage Co., N.D. Cal. Action No. C-05-00240, August 10, 2005 (slip opinion), Judge Conti overruled a 12(b)(6) motion on the grounds that, based on his reading of the then "limited case law on this issue" he would not dismiss a CLRA claim directed at a financial transaction.  But since Judge Conti struggled with the question, that case law has been developed significantly in both the California and the federal district courts in the state, and the clear weight of authority rejects the application of the CLRA to transactions that involve the extension of credit.

28

The additional hole in Cuevas' negligence claim is that California law makes clear that lenders, even consumer lenders, are in nothing more than an arms' length position with their borrowers and do not owe them any extra-contractual duty of care.  In California, a lender such as World owes no special or extraordinary duty to its borrowers outside of the loan agreement.  See Ruiz v. Decision One Mortg. Co., LLC, 2006 Dist. LEXIS 54571 at *3 (N.D. Cal. July 25, 2006) ("California courts have held that, in general, there is no duty of care owed to a borrower by a lender"); Plata v. Long Beach Mortgage Co., No. C 05-02746 JF, 2005 WL 3417375, at *6 (N.D. Cal. Dec. 13, 2005) ("In California, generally, there is no duty of care owed to a borrower by a lender"); see also Wolf v. Superior Court, 107 Cal. App. 4th 25, 33-34 (2003) (mere contract or debt does not create a fiduciary duty); Jones v. Wells Fargo Bank, 112 Cal. App. 4th 1527, 1540 n.5 (2003) (bank owed no special duty to its borrowers because "there is not a fiduciary relation between debtor and creditor"); Sierra-Bay Fed. Land Bank Ass'n v. Superior Court, 227 Cal. App. 3d 318, 334-35 (1991) ("a commercial lender is privileged to pursue its own economic interests and may properly assert its contractual rights" and is "not liable for the hardships which may befall a borrower").  Cuevas has not alleged any facts that could ever conceivably be construed to create any kind of special relationship between himself and World beyond that of borrower/lender.

**E.    HOLA Preempts Cuevas' UCL Cause Of Action Because It Is Predicated On Preempted State Laws And On TILA Violations That Cannot Support A UCL Claim**

Cuevas attempts to state a claim under the UCL in two ways.  First, he argues that World's alleged TILA, CLRA and Section 1632 violations give rise to a valid UCL cause of action under the UCL's "illegal" prong.  Cmplt. ¶79.  Second, Cuevas identifies four alleged acts by World as sufficient to constitute "unfair" conduct under the UCL.  Both attempts to state a claim for relief under the UCL fail.  As outlined above, HOLA preempts Cuevas' CLRA and 1632 claims.[11]  Thus, HOLA also preempts the UCL to the extent Cuevas' claim relies on the CLRA or Section 1632.

---

[11] As explained, these claims also fail because Cuevas cannot allege facts sufficient to state a claim under either statute.  Thus, in the unlikely event that the Court were to permit Cuevas' UCL claim to move forward, the references to these statutes – as well as the reference to TILA – as predicates for UCL liability should be stricken from Paragraph 79 of the Complaint.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Further, as explained below, World's alleged TILA violations cannot be the basis for a UCL claim.

In <u>Silvas v. E*Trade Mortgage</u>, 421 F. Supp. 2d at 1317, putative class plaintiffs alleged that a federally chartered bank violated TILA and that its violations could serve as a predicate for the "illegal" prong of the UCL. The court rejected this claim, stating:

> Plaintiffs' UCL claims are premised on Defendant's alleged TILA violations. Those violations include misrepresentations on Defendant's website and in it customer disclosures regarding the mortgage applicant's TILA rescission rights…. Although Plaintiffs' UCL claims do not impose any substantive requirements on Defendant's lending activities beyond those already provided by federal law, they do provide state remedies for violations of federal law in a field preempted entirely by federal law…thus, a state's provisions of remedies for a violation of federal law amounts to a form of state regulation of the affected area, even if the state does not impose any requirements beyond those provided by the federal law. In an area where federal law preempts the entire field, such state regulation is impermissible. [421 F. Supp. 2d at 1319-20].

<u>Silvas</u> controls the present case. HOLA preempts Cuevas' UCL claim for relief against World because alleged TILA violations cannot be the foundation for a valid UCL claim. <u>Silvas</u>, 421 F. Supp. 2d at 1319-20. To the contrary, the remedies for TILA violations outlined in the Act are necessarily exclusive and, as the <u>Silvas</u> court found, allowing a state to supplement those remedies is tantamount to impermissible state regulation. <u>Id.</u> at 1320.

Cuevas alleges in Paragraph 78 of the Complaint that the following actions by World give rise to his UCL claim: a) Offering and making Cuevas loans, while failing to take into account his ability to repay such loans; b) Misrepresenting the terms of the loan; c) Failing to provide required notices and copies of loan documents; and d) Falsifying assent to TILA-required disclosures. Cmplt. ¶78. These allegations are all just thinly disguised TILA claims and are grounded in areas exclusively governed by HOLA. The first allegation implicates the most fundamental of lending practices - deciding the terms under which one will lend.[12] As noted above, federal savings associations may extend credit as authorized by federal law "without regard to state

---

[12] Notwithstanding the fact that the first of Cuevas' allegations may not serve as grounds for a UCL claim due to preemption, it still fails to identify facts sufficient to state a cause of action under UCL.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  laws purporting to regulate or otherwise affect their credit activities." <u>Silvas</u>, 421 F. Supp. 2d at

2  1319, *citing* 12 C.F.R. 560.2.  Cuevas may not use the UCL to dictate to whom a federally chartered

3  bank may lend.  Similarly, Cuevas' second and third general allegations are merely recitations of

4  World's alleged TILA violations, and all involve supposedly misleading advertising and disclosure

5  practices.  Per <u>Silvas</u>, Cuevas cannot use these TILA violations as a basis for his UCL claim.  <u>Id.</u> at

6  1319-20.  The final allegation refers to Cuevas' contention that someone forged his signature on the

7  Notice of the Right to Cancel required by TILA.  Cmplt. ¶48.  Again, this is an alleged TILA

8  violation and cannot be used as a basis for a UCL cause of action.  <u>Silvas</u>, 421 F. Supp. 2d at 1319-

9  20.  Because Cuevas grounds his UCL claims entirely in areas that HOLA preempts, his Sixth Claim

10  for Relief necessarily fails in its entirety.

11  **F.     Cuevas' Claim For Unjust Enrichment Fails Because Any Such Claim Is Preempted**

12  **And Cannot Arise Out Of The Limited Relationship Between Cuevas And World**

13           Cuevas' cause of action for unjust enrichment – which he utterly fails to support with

14  specific facts - fails as a matter of law because he maintained no relationship with World that could

15  entitle him to such a remedy.  As outlined above, the only relationship between World and Cuevas

16  was the contractual relationship between a lender and borrower.  No equitable claim that supports an

17  "unjust enrichment" allegation can arise out of such a limited relationship.  <u>See, e.g.</u>, <u>Rokos v. Peck</u>,

18  182 Cal. App. 3d 604, 619 (1986) (granting demurrer based on the fact that no relationship existed

19  between plaintiff and defendants and, therefore, unjust enrichment was not an available remedy).  In

20  any event, HOLA preempts this claim.  Cuevas' effort to gain state law-based equitable relief against

21  World runs headlong into an important purpose of field preemption- to prevent state remedies for

22  violation of federal law.  <u>See</u> <u>Silvas</u>, 421 F. Supp. 2d at 1319.

23

24  **G.     Cuevas' Prayer for Punitive Damages Should Be Stricken**

25           Cuevas seeks "punitive damages in an amount sufficient to punish the Defendants and

26  to deter the Defendants from engaging in similar conduct at issue."  Complaint p. 14:26-14:27.  But

27  such damages are not available against World, both as a matter of law and on the facts plead.

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

First, state law remedies, including punitive or exemplary damages, are not available against World over the formation of the Loan and its disclosures because state remedies cannot supplement HOLA.  See Silvas, 421 F. Supp. 2d at 1319.  Second, Cuevas does not plead facts that would ever support punitive damages against World because he has not sued World for any intentional tort, much less plead that World engaged in "oppression, fraud, or malice."[13]  See Brousseau v. Jarrett, 73 Cal. App. 3d 864, 872 (1977) (conclusory allegations that a defendant's conduct was "intentional, willful, and fraudulent is a patently insufficient statement" to entitle plaintiff to punitive damages); G.D. Searle & Co. v. Superior Court (1975) 49 Cal. App. 3d 22, 28-29 (same). In fact, Cuevas' allegations of fraud, and his claims for relief based on intentional torts, are not even directed at World.  Hence, Cuevas' claim for punitive damages fails as a matter of law.

**H.    Even if Cuevas' UCL Claim Survives, His Prayer For Injunctive Relief Under the UCL Should Be Stricken Because He Has Not Properly Plead a Putative Class Action**

Cuevas prays for injunctive relief in connection with his cause of action under the UCL.  In order to seek such a remedy under the UCL, a plaintiff must satisfy numerous requirements [see generally, Cal. Bus. & Prof. Code §§ 17203 and 17235], including those necessary to support class certification.  See Benson v. Kwikset Corp., 152 Cal App. 4th 1254, 1266 (2007) (finding plaintiff seeking injunctive relief pursuant to Sections 17203 and 17235 must meet requirements for class certification set forth in Code of Civil Procedure Section 382).  Cuevas' request to enjoin World "from continuing to engage in unfair competition as defined in [the UCL] and similar statutes of sister-states" constitutes a thinly-disguised effort to obtain national class-type injunctive relief, yet Cuevas makes no effort to establish the mandated class action prerequisites to such recovery.

---

[13] California Civil Code Section 3294 provides that: "In an action for the breach of an obligation not arising from contract, where… the defendant has been guilty of oppression, fraud, or malice, the plaintiff… may recover damages for the sake of example and by way of punishing the defendant. [] 'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. 'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.  'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.  [Cal. Civ. Code §§ 3294(a) and (c)]

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Cuevas' Second, Seventh, Eighth and Ninth Claims for Relief as against World and should strike Cuevas' prayers for punitive damages and injunctive relief against World from the Complaint.

DATED:  October 9, 2007.

REED SMITH LLP


By____/s/ Keith D. Yandell_____
        Jack R. Nelson
        Keith D. Yandell
        Attorneys for Defendant World Savings Bank, FSB
        (erroneously sued as "World Savings, Inc. dba
        World Savings Bank FSB")