1  ANNETTE D. KIRKHAM, State Bar No. 217958
   annettek@lawfoundation.org
2  MONA M. MOTWANI, State Bar No. 239677
   monam@lawfoundation.org
3  LAW FOUNDATION OF SILICON VALLEY
   111 West Saint John Street, #315
4  San Jose, CA 95113
   Telephone:    (408) 293-4790
5  Facsimile:    (408) 293-0106

6  BART E. VOLKMER, State Bar No. 223732
   BRIAN DANITZ, State Bar No. 247403
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  650 Page Mill Road
   Palo Alto, CA 94304-1050
9  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
10 Email:  bdanitz@wsgr.com

11 Attorneys for Plaintiff
   JUAN CUEVAS

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

SAN JOSE DIVISION

15

16

| | |
|---|---|
| JUAN CUEVAS,<br><br>        Plaintiff,<br><br>        v.<br><br>ALTAS REALTY/FINANCIAL SERVICES, INCORPORATED, a California corporation, dba ATLAS REALTY, dba ATLAS FINANCIAL SERVICES, ALVIN CLAIR SILBERNAGEL, SAMANTHA TREVINO,  WORLD SAVINGS, INC, dba WORLD SAVINGS BANK, FSB, and DOES 1 to 100,<br><br>        Defendants. | CASE NO.:  C07-02814 JF-PVT<br><br>**PLAINTIFF JUAN CUEVAS' OPPOSITION TO DEFENDANT WORLD SAVINGS BANK FSB'S MOTION TO DISMISS AND MOTION TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**<br><br>Date:  December 14, 2007<br>Time:  9:00 a.m.<br>Place:  Courtroom 3<br><br>Honorable Jeremy Fogel |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

RELEVANT ALLEGATIONS OF THE COMPLAINT ............................................. 1

ARGUMENT ............................................................................................................ 4

    I.    Legal Standard For Motions To Dismiss ..................................... 4

    II.   World Savings' Preemption Argument Is Not The Proper Subject Of A Motion To Dismiss .................................................................. 4

    III.  Mr. Cuevas' Complaint States A Claim For Relief Against World Savings For Violations Of California Civil Code Section 1632 ........................... 5

        A.    HOLA Does Not Preempt Mr. Cuevas' Section 1632 Claim For Relief .................................................................................... 5

        B.    Mr. Cuevas Has Properly Alleged World Savings' Violation Of California's Civil Code Section 1632 ........................................ 9

    IV.  HOLA Does Not Preempt Mr. Cuevas' UCL Cause of Action ........................... 11

    V.   The Complaint States a Valid Negligence Claim ...................................... 11

        A.    Mr. Cuevas' Negligence Claim Is Not Preempted .................................. 14

        B.    Mr. Cuevas Has Sufficiently Alleged Negligence .................................. 14

    VI.  Mr. Cuevas Requests Permission to Amend the Complaint with Respect to His CLRA Claim Against World Savings ............................................ 15

    VII.  Mr. Cuevas Has Stated A Claim For Relief For Unjust Enrichment .................. 15

    VIII.  Mr. Cuevas' Prayer For Punitive Damages Against World Savings Is Proper ..... 16

    IX.  Mr. Cuevas' Request For Injunctive Relieve Under The UCL Is Proper ............ 17

    X.   Should The Court Determine That Mr. Cuevas Has Failed To Properly Allege Any Of The Claims Above, It Should Grant Him Leave To Amend ........ 17

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alkan v. Citimortgage, Inc.*, 336 F. Supp. 2d 1061 (N.D. Cal. 2004) ............................ 7

*Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000 (E.D. Cal. 2003) ........................ 8

*Benson v. Kwikset Corp.,* 152 Cal. App. 4th 1254 (2007) ...................................... 17

*Binetti v. Washington Mut. Bank,* 446 F.Supp.2d 217 (S.D.N.Y. 2006) ...................... 7, 12, 16

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .............................. 4

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ............................................................................ 11

*Courtney v. Halleran.*, 485 F.3d 942 (7th Cir. 2007) ....................................... 7

*Dunkin v. Boskey*, 82 Cal. App. 4th 171 (2000) ........................................... 16

*Fenning v. Glenfeld*, 40 Cal. App 4th 1285 (1995) ........................................ 7

*Fidelity Federal Sav. & Loan Assn. v. De La Cuesta*, 458 U.S. 141 (1982) .................. 6

*Gibson v. World Savings & Loan Ass'n*, 103 Cal. App. 4th 1291 (2002) .................. 7, 11, 13

*Gonzalez v. Ameriquest Mortg. Co.*, No. 03-00405 JSW, 2004 WL 2472249 (N.D. Cal. 2004) ......................................................................... 9

*Greenberg v. Sala*, 822 F.2d 882 (9th Cir. 1987) ......................................... 15

*Hussey-Head v. World Savings & Loan*, 111 Cal. App. 4th 773 (2003) ..................... 7

*In re Ocwen Federal Bank FSB Mortgage Servicing,* MDL 1604, 04C2714, 2006 WL 7947392006 (N.D.Ill. 2006) .......................................................... 16

*Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir.1997) .......................... 5

*Leto v. World Savings & Loan Ass'n,* No. 98CA02610G, 1998 WL 1784221, (W.D.Tex. 1998) ...................................................................... 16

*Lilley v. Charren*, 936 F. Supp. 708 (N. D. Cal. 1996) .................................... 16

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ........................................... 4

*Lopez v. World Savings & Loan Assn.*, 105 Cal.App.4th 729 (2003) .................... 11, 13

*Mckell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) ...................... 13, 14

*Munoz v. Int'l Home Capital Corp.,* No. C03-01099 RS, 2004 WL 3086907 (N.D.Cal. 2004) .................................................................. 11, 15

*Morse v. Mutual Federal Sav. & Loan Ass'n.,* 536 F.Supp. 1271 (D.Mass 1982) .............. 12

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688 (Cal.App. 1
Dist. 2007) ................................................................................................................. 17

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994)............................. 4

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) .......................... 4

*Plata v. Long Beach Mortg. Co.*, No. C 05-02746 JF, 2005 WL 3417375 (N.D.Cal.
2005).................................................................................................................. 11, 15

*Rokos v. Peck*, 182 Cal.App.3d 604  (Cal.App.2.Dist 1986) ........................................ 16

*Ruiz v. Decision One Mortgage Company*, No. C06-02530 HRL, 2006 WL
2067072 (N.D. Cal. 2006)................................................................................. 11, 14

*Scheuer v. Rhodes*, 416 U.S. 232 (1974), *overruled on other grounds, Davis v.
Scherer*, 468 U.S. 183 (1984)..................................................................................... 4

*Silvas v. E\*Trade Mortgage Corp.*, 421 F. Supp. 2d 1315 (S.D. Cal. 2006)...................... 8, 12, 13

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ........................................... 4

## STATUTES

12 C.F.R. § 560.2 ..................................................................................... 7, 8, 13, 14

12 U.S.C. § 1461 ............................................................................................................ 1

Cal. Bus. & Prof.Code § 17200................................................... 1, 8, 11, 12, 13, 17, 18

Cal. Bus. & Prof.Code § 17203 ................................................................................... 17

Cal. Bus. & Prof.Code § 17204 ................................................................................... 17

Cal. Civ. Code § 1632 ...................................................... 1, 5, 6, 7, 8, 9, 10, 11, 12, 14, 18

Cal. Civ. Code § 1770 ................................................................................. 1, 15, 18

Cal. Evid. Code § 669 ................................................................................................. 15

Fed. R. Civ. P. 12(b)(6).................................................................................................. 4

## MISC.

1996 OTS LEXIS 25 (Dec. 24, 1996)..................................................................... 12, 13

Witkin, Summary of California Law, Contracts § 124 (10th ed.).................................... 6

1

**INTRODUCTION**

2     Plaintiff Juan Cuevas ("Mr. Cuevas") was fraudulently induced into refinancing his

3 existing home mortgage in May 2006 by a mortgage broker acting in concert with a mortgage

4 lender.  The First Amended Complaint ("FAC") details these unfortunate events and alleges

5 claims against World Savings Bank FSB ("World Savings"), Atlas Realty/Financial Services

6 ("Atlas"), Alvin Clair Silbernagel ("Silbernagel") and Samantha Trevino ("Trevino") for this

7 fraudulent transaction.

8     Mr. Cuevas' claims against World Savings for violations of California Civil Code Section

9 1632, California Business and Professions Code Section 17200 ("UCL") and California Civil

10 Code Section 1770 *et seq.* ("CLRA") are at issue in this motion.  World Savings also alleges that

11 Mr. Cuevas' causes of action for negligence and unjust enrichment should be dismissed and

12 finally that Mr. Cuevas' prayer for punitive and exemplary damages from World Savings should

13 be stricken from his complaint.

14     World Savings attempts to argue that the Home Owners' Loan Act, 12 U.S.C. § 1461 *et*

15 *seq.* ("HOLA"), preempts Mr. Cuevas' consumer protection claims.  The law is clear that laws of

16 general applicability, which neither discriminate against national banks nor specifically regulate

17 the business of lending, are not preempted.

18     Contrary to World Savings' characterizations, Mr. Cuevas' claims fall beyond the reach of

19 HOLA preemption.  The state laws under which Mr. Cuevas brings his claims are traditional areas

20 of state authority and do not interfere with the ability of World Savings to conduct the business of

21 banking or making loans.  Instead, they are laws of general applicability to protect consumers

22 from deceptive, unfair and unlawful business practices.  The fact that World Savings claims to be

23 a federally insured lending institution does not immunize it from conduct which is illegal under

24 California law.  Accordingly, World Savings' motion to dismiss Mr. Cuevas' causes of action for

25 violations of California Civil Code Section 1632, California Business and Professions Code

26 Section 17200 and negligence must be denied.  Mr. Cuevas respectfully requests that the Court

27 grant him leave to amend the Complaint with respect to his CLRA claim against World Savings.

28        **RELEVANT ALLEGATIONS OF THE COMPLAINT**

1    Juan Cuevas is a fifty-nine year old man who has owned his home at 672 Swallow Drive in

2    San Jose, California since 1991. FAC ¶ 16. Mr. Cuevas was born and raised in Mexico. *Id.* ¶ 17.

3    Mr. Cuevas speaks Spanish and reads and writes almost no English. *Id.* In February 2006, Mr.

4    Cuevas began to discuss the possibility of refinancing his existing mortgage with defendant

5    Trevino. *Id.* ¶ 18. The conversations between Mr. Cuevas and defendant Trevino were

6    exclusively in Spanish. *Id.*

7    During their conversations, defendant Trevino would repeatedly reassure Mr. Cuevas that

8    she could help him lower his monthly mortgage payment. *Id.* ¶ 20. Mr. Cuevas' existing

9    mortgage was for $373,000 and he told defendant Trevino that he and his wife were struggling to

10   make their monthly mortgage payments. *Id.* ¶ 19. Mr. Cuevas also told defendant Trevino that he

11   did not want a variable rate loan and further that he wanted his property taxes and homeowners

12   insurance included into his mortgage payments. *Id.* ¶ 21.

13   In order to convince Mr. Cuevas to enter into this deal, defendant Trevino told Mr. Cuevas

14   that: she would obtain the best available loan for Mr. Cuevas; that she would obtain a loan that

15   was affordable for Mr. Cuevas; that Mr. Cuevas could take out an additional $40,000 and the

16   payments would still only be $1600 per month; $1800 per month if he wanted taxes and insurance

17   included; that the interest rate would only go up once each year, and that the payment would only

18   go up by $100-$200 for each of the first 5 years; and, that the payments were interest only, and

19   that Mr. Cuevas could pay in extra money each month that would go directly towards the principal

20   amount. *Id.* ¶ 22. Based on these misrepresentations, Mr. Cuevas agreed to enter into the

21   refinance loan with World Savings. *Id.* ¶ 24.

22   On May 31, 2006, Mr. Cuevas signed the refinancing documentation. *Id.* ¶ 28. However,

23   despite the fact that all of Mr. Cuevas' discussions with defendant Trevino were in Spanish and,

24   despite the fact that Mr. Cuevas speaks and reads almost no English whatsoever, all of the

25   documents presented to Mr. Cuevas were in English. *Id.* After Mr. Cuevas signed the stack of

26   documents on May 31, 2006, defendant Trevino provided Mr. Cuevas only with an *unsigned* copy

27   of the documents. *Id.* ¶ 34. Included among the unsigned documents were multiple copies, also

28   *unsigned*, of the Notice of Right to Cancel required by the Federal Truth in Lending Act. *Id.* In

1   addition to being unsigned, the copies of the Notice of Right to Cancel erroneously identified the

2   date of the transaction as June 2, 2006 and the expiration of the cancellation right as June 6, 2006.

3   *Id*.

4        The Notice of Right to Cancel documents actually signed by Mr. Cuevas on May 31, 2006

5   also erroneously identified the date of the transaction as June 2, 2006 and the expiration of the

6   cancellation right as June 6, 2006. *Id*. ¶ 35. However, at some point after Mr. Cuevas signed the

7   documents, Defendants made handwritten changes to the Notice of Right to Cancel document. *Id.*

8   Specifically, Defendants changed the date of the transaction from June 2, 2006 to May 31, 2006,

9   and the expiration of the cancellation right from June 6, 2006 to June 3, 2006. In addition,

10  Defendants *forged* the initials "JC" next to each of the handwritten changes, thus falsely making it

11  appear as though Mr. Cuevas was given the proper notice required by the Truth in Lending Act.

12  *Id*. World Savings improperly disbursed funds to Mr. Cuevas on June 6, 2006 at 2:29 pm, more

13  than nine hours prior to the expiration of Mr. Cuevas' right to cancel as noticed. *Id*. ¶ 36.

14       Mr. Cuevas discovered the harmful nature of the loan when his first statement showed the

15  principal had increased despite the fact that Mr. Cuevas included an additional $400 check to pay

16  down the principal amount together with his first interest-only payment. *Id*. ¶ 37. Mr. Cuevas

17  soon learned that the loan was not what he had bargained for. Instead the loan was negatively

18  amortized with a variable interest rate that could adjust each month in an amount far exceeding

19  $100-$200 per year for the first five years with a prepayment penalty of $10,253 not $7,000. *Id*. ¶

20  29. Concerned, Mr. Cuevas returned to Defendant Trevino to have the loan "fixed." *Id*. ¶ 37.

21  Defendant Trevino stated that Defendant World Bank had changed the terms of the loan without

22  her knowledge and that there was nothing that she could do. *Id*. When Mr. Cuevas went to

23  Defendant World Bank, Defendant World Bank recommended that Mr. Cuevas go and "talk to

24  your broker." *Id*.

25       Mr. Cuevas believes that World Savings acted in concert with and conspired with the other

26  defendants in order to induce Mr. Cuevas to enter into the transaction with World Savings. *Id*. ¶

27  40. Mr. Cuevas' monthly payment has increased to more than $3200 per month, a sum that

28  exceeds his monthly income, and he is now facing the imminent threat of default and foreclosure.

1  | *Id.* ¶ 38.

2  | **ARGUMENT**

3  | **I.    Legal Standard For Motions To Dismiss**

4  |     A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will not be granted

5  | unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim

6  | which would entitle him to relief. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794

7  | (9th Cir. 2007). The issue presented by such a motion is not whether the plaintiff will prevail in

8  | the action, but whether the plaintiff is entitled to offer evidence in support of its claims. *See*

9  | *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468

10 | U.S. 183 (1984).

11 |     The Court must construe the complaint in the light most favorable to the plaintiff,

12 | accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in

13 | plaintiff's favor. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Usher v.*

14 | *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Courts must assume that all general

15 | allegations embrace whatever specific facts might be necessary to support them. *See Peloza v.*

16 | *Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).

17 |     If the Court dismisses any claim for relief, it must then consider whether to grant leave to

18 | amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend

19 | even if no request to amend the pleading was made, unless it determines that the pleading could

20 | not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

21 | Cir. 2000) (citation and quotation omitted).

22 | **II.    World Savings' Preemption Argument Is Not The Proper Subject Of A Motion To Dismiss**

23 |

24 |     World Savings' various preemption arguments concededly depend on the truth of the

25 | predicate fact that it qualifies as a federally chartered association "at all relevant times." *See*

26 | World Savings Request for Judicial Notice at 1 (filed Oct. 9, 2007). The Court may not

27 | judicially notice that fact because the Certificate of Corporate Existence attached as Exhibit A to

28 | World Savings' Request for Judicial Notice merely states that World Savings' charter was in full

1   force and effect as of April 21, 2006. The most critical events at issue in this lawsuit took place

2   in late May and early June 2006, and Mr. Cuevas seeks relief for ongoing violations. There is

3   absolutely no competent evidence establishing that World Savings was a federally chartered

4   organization from May 2006 to the present. If World Savings is asking the Court to infer that

5   fact from the April 2006 Certificate of Corporate Existence, that legal proposition is unavailing.

6   All inferences are drawn in favor of the *plaintiff* on a motion to dismiss, not in favor of the

7   defendant. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997). Because the

8   fundamental basis for World Savings' preemption arguments cannot be established by reference

9   to the pleadings or judicially noticed facts, those arguments should be disregarded at the motion

10  to dismiss stage. Mr. Cuevas' arguments below related to preemption assume, *arguendo*, that

11  World Savings is a federally chartered bank, but Mr. Cuevas does not concede that point for this

12  motion or as a general matter.

13  **III.    Mr. Cuevas' Complaint States A Claim For Relief Against World Savings
         For Violations Of California Civil Code Section 1632**

14

15       World Savings contends that Mr. Cuevas' claim for relief for violation of California Civil

16  Code Section 1632 should be dismissed: (1) based on HOLA preemption; and (2) because the

17  statute itself does not apply to World Savings because it is a mortgage lender and not a mortgage

18  broker. Neither argument has merit. First, HOLA preemption, by its express terms, does not

19  apply to statutes like Civil Code Section 1632 which generally govern contract and commercial

20  law and only incidentally affect the lending operations of federally regulated banks. Second, a

21  mortgage held by a lender is subject to Section 1632 rescission when the loan at issue was

22  negotiated by a broker in violation of the statute (especially where the Complaint alleges, as here,

23  that a broker violated the statute while acting in the capacity as an *agent* for the *lender*). The plain

24  language of Section 1632 makes that point abundantly clear.

25       **A.    HOLA Does Not Preempt Mr. Cuevas' Section 1632 Claim For Relief**

26       California Civil Code Section 1632 provides that "any person engaged in a trade or

27  business" who negotiates a contract in one of the statute's enumerated languages (including

28  Spanish) must deliver a translation of the contract in the language in which it was negotiated

1    "which includes a translation of *every term and condition in that contract or agreement*."  Cal.

2    Civ. Code 1632(b) (emphasis added).  A person aggrieved by a violation of the statute may

3    rescind the offending contract.  *See* Cal. Civ. Code 1632(k).  These important protections of

4    California law are not preempted by federal banking regulations.

5        Section 1632 reflects a statutory codification of fundamental principles of contract law:

6    enforceable contracts reflect mutual assent of the parties to the material terms of an agreement and

7    are not the product of unconscionable conduct or fraud.  *See, e.g.,* Witkin, Summary of California

8    Law, Contracts § 124 (10th ed.) (noting that "[a] special problem arises where a person enters into

9    a disadvantageous written contract because he or she is unable to read English.").  The statute does

10   not purport to govern the lending activities of any organization and does not require the inclusion

11   of any statement or information in a contract.  On the contrary, the translation requirement is

12   agnostic to the terms of the contract and merely requires that all terms in a covered contract be

13   translated into the language in which the negotiation took place.  At its core, Section 1632 is a

14   statute which requires contracts to have only a modicum of fairness to be enforced; that goal is in

15   harmony with the HOLA statutes and regulations that World Saving invokes in support of its

16   preemption argument.  *See Fidelity Federal Sav. & Loan Assn. v. De La* Cuesta, 458 U.S. 141, 159

17   (1982) (HOLA was the "product of the Great Depression of the 1930's [and] was intended to

18   provide emergency relief with respect to home mortgage indebtedness at a time when as many as

19   half of all home loans in the country were in default.") (internal quotation omitted).  World

20   Savings' novel argument that its adherence to Section 1632 would "interfere" with the uniform

21   administration of federal banking law is not well taken.

22        World Savings argues that HOLA preempts Mr. Cuevas' Section 1632 claim for relief

23   because a state law requiring the provision of *any* information to a consumer in connection with a

24   home loan is subject to preemption.  *See* World Savings Mem. at 4.  That unsupported proposition

25   is not the law.  Indeed, the argument ignores entirely the broad limits placed on HOLA preemption

26   by the regulation itself.  The following types of state laws are *expressly* not preempted: (1)

27   contract and commercial law; (2) real property law; (3) certain homestead laws; (4) tort law; (5)

28

1  criminal law; and (6) other laws specified by the Office of Thrift Supervision ("OTS").  *See* 12

2  C.F.R. § 560.2(c)(1).

3          The pertinent authority establishes that state statutes directed generally to commercial

4  transactions, like Section 1632, are not preempted by HOLA.  *See Courtney v. Halleran*, 485 F.3d

5  942, 951 (7th Cir. 2007) (federal banking laws do not preempt state laws of general applicability);

6  *Binetti v. Washington Mut.* Bank, 446 F. Supp. 2d 217, 220 (S.D.N.Y. 2006) (New York's

7  consumer fraud statute not preempted by HOLA because it is not directly aimed at lenders, has

8  only an incidental impact on lending relationships, does not interfere with federal objectives and

9  "is precisely the type of general commercial law designed to establish the basic norms that

10  undergird commercial transactions") (citation and internal quotation omitted); *Alkan v.*

11  *Citimortgage, Inc.*, 336 F. Supp. 2d 1061, 1064 (N.D. Cal. 2004) (California debt collection

12  statute not subject to HOLA preemption because it does not constitute a lending regulation);

13  *Hussey-Head v. World Savings and Loan*, 111 Cal. App. 4th 773, 782 (2003) (state credit

14  reporting statute was not preempted by HOLA because "it does not purport to govern the manner

15  in which World Savings or any federal savings association runs its business."); *Gibson v. World*

16  *Sav. & Loan Ass'n*, 103 Cal.App.4th 1291, 1301 (2002) (California unfair competition statute was

17  not preempted because the claims were "predicated on the duties of a contracting party to comply

18  with its contractual obligations," "on the duty not to misrepresent the material facts, and on the

19  duty to refrain from unfair and deceptive business practices."); *Fenning v. Glenfeld,* 40 Cal. App

20  4th 1285, 1299 (1995) (California unfair competition statute was not preempted because the state

21  "can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive

22  business practices.").

23          Section 1632 is not preempted by HOLA because it relates to contract, commercial and tort

24  law generally and is not aimed at regulating federal banks with respect to their lending practices.

25  Indeed, Section 1632 applies to a wide variety of commercial contracts so long as they are

26  negotiated in one of the five specified languages.  *See* Cal. Civil Code 1632(b) (statute applies, for

27  example, to installment sales contracts, vehicle sales and leases, loans secured by personal

28  property and legal services agreements).  It is a consumer protection statute enacted to prevent

1    fraud and the proliferation of unconscionable contracts and is more akin to contract and tort law

2    than to laws imposing banking requirements.  Because Section 1632 pertains to contracts,

3    commercial dealings and the prevention of fraud, it falls within the express exceptions to HOLA

4    preemption.  *See* 12 U.S.C. § 560.2(c).

5          To avoid this conclusion, World Savings relies heavily on *Silvas v. E*Trade Mortgage*

6    *Corporation*, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006).  However, the *Silvas* court made clear

7    that "UCL claims alleging predicate acts that were violations of the general legal duties with

8    which every business must comply" survive claims of preemption by HOLA.  *Id*. at 1320.  That is

9    precisely the situation presented here.  California Civil Section 1632 does not target lending

10   institutions, but as noted above, is a broad statute with general applicability.  Therefore, contrary

11   to World Savings' assertion, *Silvas* does not support preemption of Section 1632.  Indeed, in that

12   case the *sole* predicate for plaintiff's Section 17200 claim was a violation of TILA, a disclosure

13   statute directed to regulating lenders.  *Id*. at 1319.  Accordingly, the Court concluded that the

14   Section 17200 claim brought in *Silvas* amounted to "regulation of Defendant's lending activities."

15   *Id*. at 1320.  That is plainly not the case with Civil Code Section 1632.  While *Silvas* is inapposite

16   here, to the extent that it has some relevance, the case cuts against a finding of HOLA

17   preemption.[1]

18         The fact that Section 1632 is not preempted based on the express exceptions set forth in the

19   regulation comes in to sharp focus when considering the practical application of Section 1632.

20   Mr. Cuevas could have brought a claim for rescission based on fraud in the inducement and

21   unconscionability of the contract given the facts alleged.  Those claims would indisputably survive

22   a charge of HOLA preemption.  However, when those same concepts are applied under the rubric

---

24   [1] The other cases cited by World Savings are likewise unavailing.  *Am. Bankers Ass'n v. Lockyer*, 239
25   F. Supp. 2d 1000 (E.D. Cal. 2003) concerned a state statute that required certain disclosure statements on
     credit card billing statements.  That statute was specifically preempted by 12 C.F.R. § 560.2(b)(9), which
     provides for preemption of state laws that require specific disclosures.  Section 1632 does not require any
26   disclosures to be made by federal banks, but rather, generally requires businesses to provide a translation
     of the relevant terms of a contract to consumers (whatever those terms may be).  The statute simply does
27   not regulate the *content* of disclosures as World Savings repeatedly asserts.  Accordingly, Section 1632 is
     analyzed properly under 12 C.F.R. § 560.2(c), not 12 C.F.R. § 560.2(b).  For this reason, *Lopez v. World
     Savings & Loan Ass'n*, 105 Cal. App. 4th 729 (2003) likewise does not support World Savings' position.
28

1    of Section 1632, World Savings claims that HOLA preemption applies. That argument elevates

2    form over substance. Section 1632 has common law roots and a common law remedy. It was

3    enacted to prevent fraud and deceptive practices in contracts. The statute is not preempted merely

4    because the Legislature deemed these common law principles worthy of codification.

5           **B.    Mr. Cuevas Has Properly Alleged World Savings' Violation Of
                     California's Civil Code Section 1632**

6

7           World Savings admits that Section 1632 applies to loan agreements secured by real

8    property that have been "conducted by mortgage brokers." Motion to Dismiss at 7. *See also*

9    *Gonzalez v. Ameriquest Mortg. Co.*, Case No. 03-00405 JSW, 2004 WL 2472249, *7-*8 (N.D.

10   Cal. March 1, 2004) (explaining the statutory basis underlying the proposition that real property

11   loans are subject Section 1632 when they are negotiated by a broker). World Savings also

12   recognizes that the loan at issue here was negotiated by a broker, Atlas Realty and its agents. *See*

13   FAC ¶¶ 2-4. Given this record, it is difficult to fathom how World Savings can contend that the

14   loan at issue is not subject to Section 1632 rescission if Mr. Cuevas can prove the underlying

15   allegations in his Complaint. And in fact, all of World Savings' arguments on this point lack

16   merit.

17          First, World Savings asserts that the Section 1632 claim fails because it was not acting as

18   a broker with respect to Mr. Cuevas' transaction and did not negotiate the transaction at issue.

19   That argument strains credulity. Section 1632 provides for rescission of any loan negotiated by a

20   broker where the substantive elements of the statute have been violated. Section 1632 would be

21   a nullity if a mortgage lender were able to avoid rescission based on the fact that it personally did

22   not act as the broker of a loan. In situations where brokers are involved with the negotiations,

23   the *loan itself* is subject to rescission if the statute has been violated, regardless of the

24   participation of the lender and regardless of any subsequent assignment of the loan. *See* Cal.

25   Civil Code § 1632(k) (creating a remedy of rescission with respect to "the contract or

26   agreement" and noting that the remedy is applicable where the agreement has been assigned).

27   World Savings' plea that it was not involved with the negotiation and is not a broker is a red

28

1    herring.  The remedy that Mr. Cuevas seeks runs against the contract itself and is not confined to

2    a particular party.

3         Second, and perhaps more fundamentally given the facts of this case, World Savings can

4    be held liable for Atlas' brokering activities under general principles of agency law.  World

5    Savings argues that it cannot be deemed a principal of the mortgage broker because Mr. Cuevas

6    has alleged that Atlas was "his agent" and that "he was never led to believe that Atlas was

7    affiliated with World."  Motion to Dismiss at 7-8.  That argument, unfortunately, misstates the

8    allegations of the Complaint.  The actual allegations are that Mr. Cuevas *believed* Atlas and its

9    employees "to be honest brokers acting on his behalf."  FAC ¶ 23.  However, that belief was

10   mistaken because Atlas and its employees are alleged to have been *faithless mortgage brokers*

11   *who were not acting with Mr. Cuevas' best interest in mind, but steered him to a predatory loan*

12   *with World Savings to his severe detriment and defendants' financial gain.  See* FAC ¶¶ 12, 22,

13   24, 29-33, 37.  Mr. Cuevas also alleges that "World Savings Bank conspired with co-Defendants

14   to make . . . misrepresentations in order to induce Mr. Cuevas to enter into this ruinous

15   transaction."  FAC ¶ 40.[2]  World Savings' assertion that the factual allegations "eliminate any

16   imputation to World" of Atlas' broker responsibilities is wholly belied by the Complaint itself

17   and based on unfounded inferences from innocuous allegations.

18        Indeed, Paragraphs 7, 12, and 24, of the FAC allege a general agency relationship

19   between World Savings and the mortgage brokers.  Consequently, the broker's activities are

20   generally attributable to World Savings and Mr. Cuevas is entitled to rescission of the World

21   Savings loan under Section 1632 given that the Complaint sets forth the mortgage brokering

22   activities of the Defendants in detail and alleges their failure to provide a Spanish translation

23   even though the negotiations leading up to the loan were negotiated in Spanish.  *See* FAC ¶¶ 12-

24   13, 18-31.  Because World Savings can be held liable for Atlas' brokering activities under

25

26        [2] In Paragraph 2 of the Complaint, Mr. Cuevas alleges that Atlas *held itself out* to be a mortgage
     broker without affiliation to any particular lender.  Despite World Savings' contrary insinuation, Mr.
27   Cuevas does *not* allege that Atlas had no affiliation with World Savings.  On the contrary, the Complaint
     directly challenges Atlas' claims of impartiality and alleges that World Savings and Atlas were acting in
28   concert.

1    general agency theories, the motion to dismiss is not well founded.  That proposition has been

2    affirmed each time it has been presented to this Court.  *See Munoz v. International Home Capital*

3    *Corp.*, Case No. 03-01099 RS, 2004 WL 3086907, *9 (N.D. Cal. May 4, 2004) (Section 1632

4    claim against lender sufficient to withstand motion to dismiss because "brokering activities of []

5    defendants are attributable to [creditor] under the general rules of agency"); *Plata v. Long Beach*

6    *Mortg. Co.*, Case No. 05-02746 JF, 2005 WL 3417375, *9 (N.D. Cal. Dec. 13, 2005) (Section

7    1632 claim against creditor sufficient to withstand motion to dismiss under liberal pleading

8    standards for agency liability); *Ruiz v. Decision One Mortgage Company*, Case No. 06-02530

9    HRL, 2006 WL 2067072, *4 (N.D. Cal. July 25, 2006) ("Plaintiffs' agency allegation is

10   incorporated into their claim for violation of California Civil Code section 1632.").[3]

11          **IV.    HOLA Does Not Preempt Mr. Cuevas' UCL Cause of Action**

12          Mr. Cuevas has alleged that World Savings violated California's unfair competition law's

13   ("UCL") prohibition against "unlawful," "unfair" or "fraudulent" business acts or practices.  Cal.

14   Bus. & Prof. Code § 17200 *et seq.*  The UCL is a broad consumer protection law of general

15   applicability that applies to *any* unfair or deceptive business act or practice.  The statute does not

16   specifically focus on lending or deposit-taking activities.  *Cel-Tech Communications, Inc. v. Los*

17   *Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180-181 (1999) (UCL intended to address "wrongful

18   business conduct in whatever context such activity might occur.").  Accordingly, it is undisputed

19   that the UCL is not preempted by HOLA as a general matter.  *Lopez v. World Savings & Loan*

20   *Assn.* 105 Cal.App.4th 729, 741-742 (2003) ("UCL remains available to remedy a myriad of

21   potential unfair, unlawful and fraudulent practices engaged in by federally chartered savings and

22   loan associations, so long as the practice is outside the scope of federal regulation."); *Gibson v.*

23   *World Savings & Loan Ass*n. 103 Cal.App.4th 1291, 1299 (2002) ("It is well established in

24   California that claims for relief under the UCL and related state laws are not preempted by

---

26          [3] World Savings has cited both *Plata v. Long Beach Mortg. Co*, and *Ruiz v. Decision One Mortgage Company* in its opening brief even though they are designated "not for citation."  While Mr. Cuevas is mindful of L.R. 7-14, he respectfully requests that the Court take notice of these cases, in the interest of completeness, so that their holdings may be fully and fairly presented by both sides to this dispute.

1  section 545.2."); *see also*, *Morse v. Mutual Federal Savings and Loan Association*, 536 F. Supp.

2  1271 (D.Mass 1982) (federal savings associations are subject to general Massachusetts statute

3  proscribing unfair and deceptive business practices); *Binetti v. Washington Mut. Bank,* 446

4  F.Supp.2d 217, 219 (S.D.N.Y. 2006) ("[N]othing in federal law preempts general deceptive

5  practices statutes.") *citing* OTS Office of Chief Counsel Opinion Letter, 1996 OTS Lexis 25, *17

6  (Dec. 24, 1996).[4]

7      Recognizing that Section 17200 is not preempted as a general matter, World Savings

8  alleges that the specific application of Section 17200 in this case leads to a finding of

9  preemption.  World Savings attempts to argue that Mr. Cuevas' UCL claim is preempted

10  because: (1) Section 1632 is itself preempted; (2) TILA is preempted when enforced using the

11  unfair competition statute; (3) the business practices Mr. Cuevas has identified as being unfair

12  and fraudulent under the UCL are preempted because they affect World Savings' lending

13  practices.  With one minor exception, these arguments are not well taken.

14      First, as noted above, Mr. Cuevas' Section 1632 claim against World Savings is not

15  preempted by HOLA.  Accordingly, Mr. Cuevas has necessarily stated a valid Section 17200

16  claim against World Savings based on its violation of that statute.  Second, TILA violations in

17  this action may serve as predicates for a Section 17200 claim because Mr. Cuevas does not seek

18  to enforce TILA in any way that is different from the remedies accorded by the statute itself.  For

19  this reason, *Silvas v. E*Trade Mortgage Corporation* is inapposite.  In that case, the court's

20  preemption analysis turned on the fact that plaintiff was attempting to use Section 17200 to

21  enforce TILA in a manner that departed from the strictures of the statute. *Silvas v. E*Trade*

22

23  [4]  "While the DAP [Deceptive Acts and Practices Statute] may affect lending relationships . . .
    the impact on lending appears to be only incidental to the primary purpose of the statute -- the
24  regulation of the ethical practices of all businesses engaged in commerce in Indiana. [] There is
    no indication that the law is aimed at any state objective in conflict with the safe and sound
25  regulation of federal savings associations, the best practices of thrift institutions in the United
    States, or any other federal objective identified in § 560.2(a). In fact, because federal thrifts are
26  presumed to interact with their borrowers in a truthful manner. Indiana's general prohibition on
    deception should have no measurable impact on their lending operations."

27  *Binetti v. Washington Mut. Bank,* 446 F.Supp.2d at 217 *citing* 1996 OTS Lexis 25 at *17.

28

1    *Mortgage Corp.*, 421 F. Supp. 2d at 1320. Specifically, plaintiff was attempting to use Section

2    17200 to resurrect time-barred TILA claims given the one year statute of limitations for TILA

3    and the four years statute of limitations under the UCL. *Id*. Here, Mr. Cuevas' TILA claims are

4    not time barred and he is enforcing the statute consistently with the remedies available under

5    TILA. Accordingly, there can be no preemption because there is no conflict between state and

6    federal law.[5]

7         Finally, Mr. Cuevas has alleged that World Savings violated the fraudulent prong of the

8    UCL by: (1) failing to consider Mr. Cuevas' ability to repay the loan; (2) misrepresenting the

9    terms of the loan; (3) failing to provide required documentation in connection with the loan; and

10   (4) forging Mr. Cuevas' loan documents after execution. FAC ¶ 78. Even if the first and third

11   allegations can be read to implicate World Savings' banking activities, the second and fourth

12   allegations cannot. By misrepresenting the terms of the loan, World Savings is alleged to be

13   responsible for activity that is akin to common law fraud. That allegation is obviously not

14   preempted by HOLA. Likewise, World Savings is alleged to be responsible for forging

15   documentation related to Mr. Cuevas' loan after the papers were signed. That is not a

16   "disguised" TILA allegation. Rather, it is a fraudulent business practice that is independently

17   remediable under the unfair competition statute. The allegation has nothing to do with

18   advertising or disclosure requirements but seeks redress for the after-the-fact falsification of

19   documents related to a loan. HOLA does not preempt state statutes that seek to remedy such

20   behavior.

21         In sum, Mr. Cuevas' UCL claims seek only to enforce "the basic norms that undergird

22   commercial transactions." 1996 OTS Lexis 25 at *17. Accordingly, they are not preempted

23   based on 12 C.F.R. § 560.2(c). *See McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457,

24   1487 (2006) ("plaintiffs here are using the UCL to enforce general duties imposed on all

25

26   _____

27   [5] *Silvas* is further distinguishable because the allegations involved loan-related fees and advertising, two areas expressly preempted by HOLA, which are not present in this case. *Silvas v. E\*Trade Mortgage Corp.*, 421 F. Supp. 2d at 1319.

28

1    businesses operating in California, i.e., the duties to refrain from fraudulent and unfair business

2    practices.  As noted above, usage of state laws in this manner is not preempted.").

3        **V.      The Complaint States A Valid Negligence Claim**

4        World Savings contends that Mr. Cuevas' cause of action for negligence against World

5    Savings should be dismissed because (1) HOLA preempts the application of California law to a

6    federally chartered bank's lending activities; and (2) lenders do not owe borrowers an extra-

7    contractual duty of care.  For the reasons stated in the foregoing sections, these arguments have

8    no merit.  First, HOLA preemption, by its express terms, does not apply to the commission of

9    common law torts.  12 C.F.R. § 560.2(c).  Second, World Savings can be held liable for Atlas'

10   tortious conduct under general principles of agency law.

11           **A.      Mr. Cuevas' Negligence Claim Is Not Preempted**

12       As discussed above, 12 C.F.R. § 560.2(c) lists the types of state laws that "are not

13   preempted to the extent that they only incidentally affect the lending operations of Federal

14   savings associations or are otherwise consistent with the purposes of paragraph (a) of this

15   section."  These include contract, commercial, real property, tort and criminal law.  *See McKell*

16   *v. Washington Mutual, Inc.*, 142 Cal. App. 4th at 1487.  Mr. Cuevas' negligence claim for relief

17   is based on Defendants' failure to comply with all statutory requirements, including, but not

18   limited to, California Civil Code 1632 and TILA.  The FAC also alleges that Defendants misled

19   Mr. Cuevas into a ruinous refinance transaction by means of several negligent acts and

20   omissions.  Thus, Mr. Cuevas' negligence cause of action is not preempted.  12 C.F.R. §

21   560.2(c).

22           **B.      Mr. Cuevas Has Sufficiently Alleged Negligence**

23       World Savings contends that Mr. Cuevas' negligence claim should be dismissed because

24   lenders do not owe borrowers an extra-contractual duty of care.  Motion to Dismiss at 11.

25   However, the cases cited by World Savings itself have found that negligence claims against

26   lenders will survive a motion to dismiss under general agency theory.  In *Ruiz v. Decision One*

27   *Mortgage Company*, the Court held that a lender may be secondarily liable for the negligence of

28   the mortgage broker based on general agency principles.  *Ruiz v. Decision One Mortgage*

1    *Company*, No. 06-02530, 2006 WL 2067072 at *4.  *See also Greenberg v. Sala*, 822 F.2d 882,

2    886 (9th Cir. 1987) ("[A]s a matter of law, allegations of agency, vicarious liability, and/or

3    *respondeat superior* are not required. A person legally responsible for an act may be alleged to

4    have committed it without going into the theories which support that ultimate fact.").  In *Plata v*

5    *Long Beach Mortgage Company*, No. C05-02746, 2005 WL 3417375 (N.D. Cal. 2005), the

6    Court rejected any bright line rule that a mortgage broker may never be the agent of a lender and

7    held that plaintiff's general allegations of agency were sufficient to survive a motion to dismiss

8    plaintiff's negligence claims.  *See also Munoz v. Int'l Home Capital Corp.*, 2004 WL 3086907,

9    *11 (N.D. Cal. 2004) ("At the pleading stage, it is sufficient for plaintiffs to aver that [the lender]

10   had a general duty of care to plaintiffs, which they have done consistent with Rule 8(a).").

11          In this case, Paragraphs 7, 12, and 24, of the FAC allege a general agency relationship

12   between World Savings and the mortgage brokers.  Consequently, the broker's activities are

13   generally attributable to World Savings.  The FAC alleges that Defendants failed to explain the

14   terms of the loan, failed to provide a translation of the loan documents in Spanish,

15   misrepresented the loan terms, forged Mr. Cuevas' initials, altered loan documents, failed to

16   inform Mr. Cuevas that the documents had been altered, failed to wait until the noticed

17   cancellation period had elapsed before disbursing funds, and violated various statutes.[6]  World

18   Savings may be found liable for any or all of these acts.  Accordingly, Mr. Cuevas' claim for

19   relief for negligence is properly stated.

20          **VI.    Mr. Cuevas Requests Permission to Amend the Complaint with Respect to
                     His CLRA Claim Against World Savings**

21

22          Mr. Cuevas respectfully requests that the Court grant him leave to amend the Complaint

     with respect to his CLRA claim against World Savings.

23
            **VII.   Mr. Cuevas Has Stated A Claim For Relief For Unjust Enrichment**
24

25

26          [6] A statutory violation is negligence *per se*, or negligence as a matter of law.  California law
     recognizes and has codified that common law doctrine, World Savings' assertion that statutes do not
27   "metamorphosize" into a standard of care notwithstanding.  Cal. Evid. Code § 669 ("The failure of a
     person to exercise due care is presumed if . . . [h]e violated a statute").
28

Mr. Cuevas' allegations support his claim for relief under a theory of unjust enrichment. Unjust enrichment is the general principle that "one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution [for benefits received,] where it is just and equitable that such restitution be made." *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 195 (2000). The remedy of restitution generally restores the status quo by returning to plaintiff value of what he parted with in performing the contract minus any benefits received from the contract. *Id.*, at 198. In this case, World Savings has been unjustly enriched by reaping the benefits of a contract that was the unfortunate result of negligence and fraud. World Savings should be required to make restitution of Mr. Cuevas' payments that were based on interest rates far in excess of those he had bargained for, any interest earned on these payments and any other benefit derived from the refinance loan at issue in this action.[7] Also, for the reasons stated above, HOLA does not preempt the common law claim of unjust enrichment. *See also Binetti v. Washington Mut. Bank,* 446 F. Supp. 2d 217, 219 (S.D.N.Y. 2006) (unjust enrichment claim not preempted by HOLA in connection with refinance loan); *In re Ocwen Federal Bank FSB Mortgage Servicing*, MDL 1604, 04C2714, 2006 WL 794739, *1 (N.D. Ill. 2006) (common law counts, including unjust enrichment do not "prevent or significantly interfere with [any] national bank's exercise of its powers" and are not preempted by HOLA); *Leto v. World Savings and Loan Ass'n*, 98CA02610G, 1998 WL 1784221, *4 (W.D. Tex. 1998) (plaintiff's contract and unjust enrichment claims not preempted by HOLA).

**VIII.   Mr. Cuevas' Prayer For Punitive Damages Against World Savings Is Proper**

The FAC alleges that Defendants Atlas Realty, Alvin Silbernagel and Samatha Trevino defrauded Mr. Cuevas while, on information and belief, acting as World Savings' agents. FAC ¶ ¶¶ 7, 39, 40. If that allegation is accepted as true, as it must be for the purposes of a motion to dismiss, World Savings may be liable for its agents' fraudulent conduct, which would be imputed to World Savings as a matter of law. Accordingly, at this stage, the prayer for relief is proper and

---

[7] World Savings' citation to *Rokos v. Peck*, 182 Cal. App. 3d 604 (1986) is perplexing. The fact that an unjust enrichment claim stemming from a breach of confidence was subject to a demurrer based on the unique facts of that case has absolutely no bearing on the present action.

1    should not be stricken to the extent that Mr. Cuevas seeks to hold World Savings responsible for

2    the tortious actions of its agents.

3         **IX.    Mr. Cuevas' Request For Injunctive Relieve Under The UCL Is Proper**

4         Mr. Cuevas seeks an injunction under the UCL prohibiting World Savings from

5    "continuing to engage in unfair competition."  FAC ¶ 81.  That request is assuredly proper.  *See*

6    *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716 (2007) ("the

7    sweeping language of the UCL is intended to permit tribunals to enjoin on-going wrongful

8    business conduct in whatever context such activity might occur") (internal quotation and citation

9    omitted).  The FAC alleges that Mr. Cuevas was defrauded into entering into a financially

10   ruinous refinance transaction through Defendants' violations of several consumer protection

11   statutes and common law obligations.  Under Business and Professions Code Section 17203, Mr.

12   Cuevas may seek an injunction against a person who engages, has engaged, or is proposing to

13   engage in unfair competition.  In this case, Mr. Cuevas seeks relief in an individual, not in a

14   representative, capacity.  Accordingly, Mr. Cuevas need not certify a class to obtain that relief.

15   *Id*.  ("[a]ny person may pursue *representative* claims for relief on behalf of others only if the

16   claimant meets the standing requirements of Section 17204 and complies with Section 382 of the

17   Code of Civil Procedure [relating to class actions]").  The only case cited by World Savings on

18   this point does not stand for any remotely contrary position.  *See Benson v. Kwikset Corp.*, 152

19   Cal. App. 4th 1254, 1266 (2007) (noting that *representative* actions must meet standing and class

20   certification requirements under Proposition 64).  Mr. Cuevas may seek injunctive relief on his

21   own behalf for World Savings' UCL violations and need not certify a class to do so.  The

22   relevant statutory language could not be clearer on this point.

23        **X.    Should The Court Determine That Mr. Cuevas Has Failed To Properly
              Allege Any Of The Claims Above, It Should Grant Him Leave To Amend**

24        Although Mr. Cuevas has sufficiently pled his claims, he requests that the Court grant

25   him leave to amend the Complaint if it finds any claim to be deficient.  This request is warranted

26   as leave to amend is freely granted when to do so would not be futile.  *Lilley v. Charren*, 936 F.

27   Supp. 708, 713 (N.D. Cal. 1996) (leave to amend granted unless to do so would be futile).

28

## CONCLUSION

Mr. Cuevas has adequately alleged claims for relief for violations of California Civil Code Section 1632, the UCL, negligence and unjust enrichment. Mr. Cuevas respectfully requests that the Court grant him leave to amend the Complaint with respect to his CLRA claim against World Savings.

Dated: November 23, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:  /s/ Bart E. Volkmer
   Bart E. Volkmer

Attorneys for Plaintiff
JUAN CUEVAS