\*\* E-Filed 01/30/2008\*\*

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JUAN CUEVAS,<br><br>                Plaintiff,<br><br>    v.<br>ATLAS REALTY/FINANCIAL SERVICES, INCORPORATED, a California corporation dba ATLAS REALTY, dba ATLAS FINANCIAL SERVICES, ALVIN CLAIR SILBERNAGEL, SAMANTHA TREVINO, WORLDS SAVINGS, INC, dba WORLD SAVINGS BANK, FSB, and DOES 1 to 100<br><br>                Defendants. | Case Number C 07-02814  JF<br><br>ORDER[1] DENYING DEFENDANT ATLAS'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT WORLD SAVINGS BANK'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND COUNT SIX<br><br>[re: docket nos. 9, 11] |

Defendants World Savings Bank ("WSB") and Alvin C. Silbernagel dba Atlas Realty dba Atlas Financial Services, Alvin Silbernagel and Samantha Trevino (collectively, "Atlas") move to dismiss the First Amended Complaint ("FAC") of Plaintiff Juan Cuevas ("Cuevas"). Atlas seeks to dismiss all claims of the FAC. WSB moves to dismiss the second, sixth, seventh,

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C07-2814 JF
ORDER RE MOTIONS TO DISMISS
(JFLC3)

eighth, and ninth claims of the FAC. For the reasons stated below, Atlas's motion will be denied, and WSB's motion will be granted in part and denied in part.

## I. BACKGROUND

The following facts are alleged in Cuevas's FAC. Cuevas is a San Jose resident who speaks Spanish and reads and writes almost no English. In February 2006, Cuevas spoke to Defendant Samantha Trevino ("Trevino") about the possibility of refinancing his home loan. Cuevas explained that he and his wife were struggling to make their monthly mortgage payments of $2,755 per month. Trevino assured Cuevas that he could lower his monthly mortgage payment by refinancing his home mortgage. Trevino also told Cuevas that she would obtain the best available loan for him; that she would obtain a loan that was affordable for him; that Cuevas could take out an additional $40,000 and the payments still would be only $1,600 per month (or $1,800 per month if he wanted taxes and insurance included); that the interest rate would go up only once a year, that the payment would go up only by $100-$200 for each of the first five years; that the payments were interest only; and that Cuevas could pay extra money each month that would go directly toward the principal amount. Based upon these representations, Cuevas agreed to enter into the refinance loan with WSB.

On May 31, 2006, Cuevas signed the refinancing documents. Even though all of Cuevas's discussions with Trevino were in Spanish, and despite the fact that Cuevas speaks and reads almost no English, all of the documents presented to Cuevas were in English. After Cuevas signed the documents, Trevino provided Cuevas only with unsigned copies of the documents. Included among the unsigned documents were copies of a Notice of Right to Cancel. In addition to being unsigned, the copies erroneously identified the transaction date as June 2, 2006 and the expiration date of the cancellation right as June 6, 2006.

The original Notice of Right to Cancel, which actually was signed by Cuevas on May 31, 2006, also erroneously identified the date of the transaction as June 2, 2006 and the expiration date of the cancellation right as June 6, 2006. Unbeknownst to Cuevas, these dates subsequently were altered on the original document. Specifically, the date of the transaction was changed from June 2, 2006 to May 31, 2006, and the expiration date of the cancellation right was changed from

1  June 6, 2006 to June 3, 2006.  In addition, the initials "JC" were forged next to each of the
2  handwritten changes, thus falsely making it appear that Cuevas was given the notice required by
3  the Truth and Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*  WSB disbursed funds to Cuevas
4  on June 6, 2006 at 2:29 p.m., more than nine hours prior to the expiration of Cuevas's right to
5  cancel as noticed.

6  Cuevas discovered the true nature of the loan when his first statement showed that the
7  principal had increased even though that he had included an additional $400 check to pay down
8  the principal alone with his first interest-only payment.  Cuevas discovered that the loan was
9  negatively amortized with a variable interest rate that could adjust each month in an amount
10 exceeding $100-$200 per year for the first five years, and that the prepayment penalty would be
11 $10,253, not $7,000 as had been represented to him.  Concerned, Cuevas returned to Atlas Realty
12 to have the situation clarified.  Trevino stated that WSB had changed the terms of the loan
13 without her knowledge and that there was nothing she could do.  Cuevas went to WSB and was
14 told to speak with his broker.  Cuevas's monthly payment has now increased to more than
15 $3,200, a sum that exceeds his monthly income, and he faces imminent threat of default and
16 foreclosure.

17 On August 31, 2007, Cuevas sued Atlas and WSB for fraud, breach of fiduciary duty and
18 negligent representation.  Cuevas added claims in the FAC for relief against Atlas and WSB
19 under the TILA and various California statutes, as well as a prayer for punitive damages against
20 both Atlas and WSB.

## II. LEGAL STANDARD

22 For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the
23 Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*
24 *McKeithen,* 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the
25 complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department fo Corrections*,
26 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be
27 ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

28

3

Case No. C 07-2814 JF
ORDER RE MOTIONS TO DISMISS
(JFLC3)

### III.  DISCUSSION

**A.  Atlas's Motion To Dismiss**

Cuevas alleges multiple violations of the TILA in the FAC.  Atlas argues that these allegations do not automatically trigger federal question jurisdiction and that the FAC should be dismissed for lack of jurisdiction.  According to Atlas, Cuevas's TILA claims are not "essential" to the FAC under the well pleaded complaint rule.  Atlas also asserts that Cuevas's TILA claims are not "colorable" and that it is "self-evident" that Cuevas has "tacked on" his TILA claims for the purpose of obtaining federal jurisdiction.  Atlas does not assert that Cuevas fails to state the elements of a valid TILA claim.

There is no requirement that the Court engage in a examination of the centrality of a federal claim appearing on the face of the complaint before exercising jurisdiction.  *See Si v. CSM Inv. Corp.*, 2007 WL 1518350, *5 (N.D. Cal. 2007).  Further, "[a]ny non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction." *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 951 (9th Cir. 1999).  Accordingly, Atlas's motion will be denied.

**B.  WSB's Motion to Dismiss**

　　**1.  Preemption**

WSB argues that the Home Owners' Loan Act ("HOLA"), 12 U.S.C.A. § 1464, "expressly preempts application of any state laws that purports to- or is used in an attempt to- require a federally chartered bank[2] [to] provide any information to a consumer in connection with a home loan.  Therefore, HOLA preempts Section 1632 as it would be applied to [WSB] because Cuevas is arguing that the statute requires [WSB] to use a specific method of disclosure of the terms of a home loan." WSB Motion 4:19-22.  WSB also contends that HOLA preempts Cuevas's claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, as well as his claim of negligence.

In *Silvas v. E*trade Mortgage Corporation*, 421 F. Supp. 2d 1315, 1319 (S.D. Cal.

---

[2] The Court takes judicial notice that WSB is a federally chartered bank.

4

2006), the court stated that:

> Here, Plaintiffs' UCL claims are premised on Defendants alleged TILA violations. Those violations included misrepresentations on Defendant's website and in its customer disclosures regarding the mortgage applicant's TILA recision rights and Defendant's refusal to refund Lock-in fees even when the applicant cancels within the three-day statutory window. Plaintiffs' UCL claims therefore attack Defendant's lending practices in two categories where OTS has explicitly indicated federal law occupies the field: (1) disclosure and advertising and (2) loan-related fees.

The *Silvas* court went on to explain that HOLA does not preempt UCL claims in which the "predicated acts were violations of the general legal duties with which every business must comply." *Id.* at 1320 *citing Gibson v. World Sav. & Loan Ass'n*, 103 Cal. App. 4th 1291 (2002) ("UCL claim was based on the thrift's alleged breaches of its written contracts with its customers"); *Fenning v. Glenfed, Inc*. 40 Cal. App. 4th 1285 (1995) (fraud claim not preempted because the fraudulent deception had nothing to do with the thrift's lending practices). Only claims that are specific to a defendant's lending activities, as distinguished from legal duties applicable to all businesses, are preempted by HOLA. Cuevas's claims appear to be directed to legal requirements that are applicable to all businesses, such as truthfully memorializing in writing what is agreed to orally by contracting parties. Thus, as least at the pleading stage, WSB has not met is burden regarding preemption.

    2.    **Section 1632**

WSB next contends that Cuevas's Section 1632 claim is deficient because WSB was not acting as a broker with respect to the subject transaction and did not negotiate the loan at issue. Cuevas asserts that WSB's argument is a red herring because the remedy he seeks through this claim is not damages but rescission. Cuevas argues that "Section 1632 would be a nullity if a mortgage lender were able to avoid rescission based on the fact that it personally did not act as the broker of a loan." Opp. 9:20-22. Cuevas also contends that WSB may be held liable as an agent of Atlas.

As argued by Cuevas, the subject loan itself is subject to rescission if the statute has been violated, irrespective of the nature of the lending participation or any subsequent assignment of the loan. Moreover, Cuevas alleges specifically that "[WSB] conspired with co-Defendants to

5

Case No. C 07-2814 JF
ORDER RE MOTIONS TO DISMISS
(JFLC3)

1  make . . . misrepresentations in order to induce Cuevas to enter into this ruinous transaction."
2  FAC at ¶ 40. The FAC also alleges a general agency relationship between WSB and the
3  mortgage brokers. Id. at ¶¶ 7, 12, 24. Accordingly, WSB's motion to dismiss this claim will be
4  denied.

### 3. CLRA Claim

California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*, applies to transactions that involve the "sale or lease" of "goods" or "services." Cal. Civ. Code § 1770. WSB argues that because Cuevas's CLRA claim is based solely upon WSB's extension of credit, it necessarily fails because an extension of credit is not a good or service under the CLRA. Cuevas requests that the Court grant him leave to amend the FAC with respect to the CLRA claim against WSB. Accordingly, the Court will grant WSB's motion to dismiss this claim, with leave to amend.

### 4. Negligence

WSB next argues that it did not owe Cuevas a duty of care. Cuevas alleges that Trevino was acting as an agent of WSB, and accordingly WSB does owe such a duty to him. In *Plata v. Long Beach Mortgage Company*, 2005 WL 3417375, *11 (N.D. Cal. 2004), the court rejected a bright line rule that a mortgage broker may never be the agent of a lender and held that the plaintiff's general allegations of agency were sufficient to survive a motion to dismiss the plaintiff's negligence claims. In the instant case, the FAC alleges a general agency relationship between WSB and the mortgage broker. FAC at ¶¶ 7, 12, 24. Accordingly, Cuevas's claim for negligence is sufficiently pled for the purposes of a motion to dismiss.

### 5. Unjust Enrichment

WSB contends that Cuevas may not use a common law claim for relief to regulate a bank in a way that would be impermissible if the cause of action were codified. WSB asserts that HOLA preempts Cuevas's claims of negligence and fraud because the claims invoke the common law in a manner that would more than incidentally affect lending activities. WSB argues that Cuevas's unjust enrichment claim fails for the same reason. However, because the Court concludes that WSB has not shown that HOLA preemption applies to this case at this early

6

Case No. C 07-2814 JF
ORDER RE MOTIONS TO DISMISS
(JFLC3)

stage, it also concludes that Cuevas has sufficiently stated a claim for unjust enrichment.

### 6. Punitive Damages

WSB argues that it is not responsible for the actions of Atlas Realty, Silbernagel, and Trevino and therefore Cuevas's claims for punitive damages against WSB must be dismissed. However, Cuevas's allegations regarding the agency relationship of Defendants must be taken as true at the pleading stage and these are sufficient to support a claim for punitive damages.

### 7. Injunctive Relief

Cuevas seeks an injunction under California's UCL, prohibiting WSB from "continuing to engage in unfair competition as defined in Business and Profession Code § 17200 in the State of California and similar statues in sister states." FAC at ¶ 81.  WSB argues Cuevas lacks standing to challenge WSB's actions in other states.  Cuevas asserts that he is seeking relief in an individual rather than a representative capacity.  Cuevas's counsel agreed at oral argument to strike the reference to injunctive relief in sister states from the FAC.  Cuevas may seek injunctive relief on his own behalf in California.

## IV. ORDER

Good cause therefor appearing, Atlas's motion to dismiss is DENIED.  WSB's motion to dismiss is GRANTED with respect to the CLRA claim but otherwise is DENIED.  Cuevas is granted leave to amend.  Any amended pleading must be filed within thirty (30) days of the date of this Order.

IT IS SO ORDERED.

DATED: January 30, 2008

_____
JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Annette D. Kirkham
annettek@lawfoundation.org

Mark Christopher Carlson
mcc@carlsonlawgroup.com

Jack R. Nelson
jnelson@reedsmith.com